(No. 26810.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARLEY GRIZZLE, Plaintiff in Error.

*Opinion filed November 18, 1942.*

SUMNER & LEWIS, A. W. SCHIMMEL, and KARNS & BANDY, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and MAURICE E. GOSNELL, State's Attorney, for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

The grand jury of Lawrence county returned an indictment against plaintiff in error consisting of three counts. The first count charged him with burglarizing a wholesale liquor store owned by one John Schmitt in the city of Lawrenceville, and stealing therefrom ten cases of liquor of different brands. The second count charged him with larceny of the liquor described in the first count. By the third count he was charged with receiving and aiding in concealing certain liquor, the property of John Schmitt, knowing the same to have been stolen. The liquor described and alleged to have been received and concealed, in the third count, was a part of the same kinds and quantities of liquor described in the first and second counts. Upon a trial before a jury, plaintiff in error was found not guilty under the first and second counts of the indictment. The jury, however, found him guilty of the offense charged in the third count. The value of the property was fixed at $53. After overruling motions for a new trial and in arrest of judgment, plaintiff in error was sentenced to the penitentiary for an indeterminate term of from one to ten years. In the judgment was included the advisory recommendation of the court that the minimum duration or limit of

imprisonment be five years, and the maximum, ten years. To reverse the judgment, plaintiff in error has brought the case to this court by writ of error. He contends that the evidence is insufficient to establish the elements of the crime beyond a reasonable doubt. Particularly, it is contended that the property alleged to have been found in the possession of plaintiff in error was not shown to have been stolen by some other person; that the plaintiff in error was not shown to have received and aided in concealing the property, knowing that it had been stolen, and that it was not shown that he received the property for his own gain or to prevent the owner from again possessing it. These questions raised by plaintiff in error make it necessary to review, somewhat in detail, the facts in the record.

The facts necessary to a decision on the questions raised, may be summarized as follows: Sometime between the evening of November 3, 1940, and the morning of November 4, a building located in the city of Lawrenceville, in Lawrence county, was burglarized. This was a wholesale liquor business belonging to John Schmitt, doing business under the trade name of Ambraw Distributing Company. When the owner of the business and his employee reached the place of business about eight o'clock on the morning of November 4, they discovered the place had been broken into. Previously, on October 31, an inventory of the stock of liquor on hand was made as of the close of business on that date. This inventory was made in accordance with a government regulation requiring such inventories monthly, and also requiring records of all sales to be kept by wholesale dealers in liquor. When it was discovered that the store had been entered, an inventory of the liquor then in stock was made. By comparing this inventory with the inventory made on October 31, it was discovered that ten cases of liquor had been removed from the stock. Of the liquor missing, there were five cases of one brand, two

cases each of two other brands, and an additional case of still a different brand.

Plaintiff in error lived in Vincennes, Indiana. On the morning of November 4, certain police officers of the city of Vincennes, which is located across the river and a short distance from Lawrenceville, went to the home of plaintiff in error. They placed him under arrest and took him to police headquarters for the purpose of questioning him in regard to a matter not involved in this case. The record indicates that at that time the police officers of Vincennes had no knowledge of the burglary here involved. After they reached the police station and had questioned plaintiff in error with reference to some other charge, plaintiff in error gave the keys to his home, or living quarters, to the chief of police and requested him to take charge of certain articles in his home, including some cash and some whiskey. In response to this request, the police officers went to the home of plaintiff in error where they found, among other things, twenty pint bottles of one brand of liquor, twelve bottles of another, and two bottles and one bottle partly filled, of another brand. The liquor found in the home of plaintiff in error was liquor of the same brands and was in similar bottles to some of the liquor which was claimed to have been stolen from the place of business burglarized in Lawrenceville the night before. The bottles of liquor found at defendant's home contained no marks of identification, and there was no way by which they could be positively identified as a part of the liquor stolen in the burglary, except that they were the same brands and contained in similar bottles.

On the trial of the case, the State's Attorney attempted to identify the liquor found in plaintiff in error's possession as a part of the stolen liquor by showing that the government stamps pasted over the tops of the bottles in the shipment of liquor, from which it was claimed the

stolen liquor was taken, were numbered with consecutive serial numbers. In support of this theory, he offered in evidence thirteen bottles which were in the wholesale house and had been placed on the shelf for retail sales. It was shown that these thirteen bottles were a part of the shipment in which the stolen liquor was delivered to the wholesale house. The serial numbers on the stamps attached to the bottles of liquor found in the possession of plaintiff in error were within the range between the highest and lowest serial numbers on the stamps attached to the thirteen bottles which were not stolen.

The court admitted this evidence on the theory that it tended to identify the liquor found in the possession of plaintiff in error as a part of the shipment received by the wholesale distributor in which the thirteen bottles, not stolen, were also contained. It was properly admitted.

The State's Attorney then attempted to further identify the liquor found in the possession of plaintiff in error, as part of the stolen goods, by attempting to show that the government stamps attached to the bottles found in the possession of plaintiff in error, were stamps used by the distillery which bottled and shipped the liquor to the wholesaler in Lawrenceville. In attempting to make such proof, the State's Attorney examined a witness by the name of Earl Murphy, who was employed by the distilling company by whom the liquor was bottled and shipped to the wholesaler in Lawrenceville. He testified that in bottling whiskey for shipment to wholesale distributors, the distillery would obtain from the Collector of Internal Revenue the stamps to be placed over the tops of the bottles; that the stamps when received from the Collector of Internal Revenue were turned over to the gauger in charge of the distillery as the agent of the government. At the beginning of the day the gauger would issue to the distillery the number of stamps anticipated as necessary for use dur-

ing the day. The gauger was a government officer or employee, and not an employee of the distillery. He then issued the stamps to the distillery in blocks of about one hundred each. Before the stamps were used, they were detached from each other so that a separate stamp would be available for each bottle as the bottles moved in the line of the process of bottling. When the bottles were filled and corked, a stamp would be placed over the top of each bottle. No record of the serial numbers on the stamps used was kept. The stamps were not placed on the bottles in any particular order as to serial numbers. The State's Attorney then attempted to prove by this witness that stamps of the serial numbers on the bottles found in possession of plaintiff in error were included in the serial numbers of stamps issued by the gauger to the distillery and used in bottling the liquor contained in this particular shipment. This witness, however, had no personal knowledge of these facts. He was permitted to testify that stamps containing the serial numbers involved were used in bottling the particular shipment in question. He based this testimony, as to the serial numbers of the stamps, on his statement that these numbers were on the gauger's record of stamps used on that day. He admitted, however, that he had not seen the gauger's record. The information as to what numbers were contained on that record was given to him by someone else. He did not have access to the record of the serial numbers of the stamps kept by the gauger and had not examined that record. It was error to permit this witness to testify as to the serial numbers shown by the record of the government gauger, which record the witness had not examined, but based his testimony solely upon the information given to him by another.

The evidence tending to show that the liquor found in the possession of plaintiff in error was of the same brands and in the same character of containers as the

liquor stolen from the wholesale house, was admissible. Its weight and probative value was for the jury. It was also proper for the State's Attorney to establish further identification by proof that the serial numbers on the stamps attached to the bottles of liquor found in the possession of plaintiff in error, corresponded with the serial numbers of stamps placed on the bottles contained in the shipment. In order to make such proof, the State's Attorney should have offered in evidence the record of the gauger containing the serial numbers of the stamps used, or otherwise proved the contents of that record in some lawful manner. The attempt to prove the serial numbers of the stamps shown on the gauger's record by the witness Murphy, who had never examined the record, but who obtained the information only from a third party, who claimed to have examined the record, was purely hearsay and clearly inadmissible.

For the purpose of rebutting this evidence offered by the prosecution, the defendant attempted to prove that government stamps were often duplicated as to their serial numbers. This witness testified that the government stamps, with which he was familiar, were purchased in blocks of 42, all containing the same serial number. His testimony, however, was not with reference to the practice followed by the distillery which bottled the particular brands of liquor in question. It pertained to brands of liquor bottled in other distilleries. In the absence of a showing that this was the general practice, this evidence was not admissible, and the court properly sustained the objection to such evidence.

It is contended by plaintiff in error that the evidence was wholly insufficient to sustain the verdict. We agree with the statement of counsel for plaintiff in error that in order to sustain a conviction for receiving stolen property, knowing the same to have been stolen, the three elements

of the offense, namely: that the property must be identified as stolen property; that the person charged must be shown to have received the property, or aided in concealing it, knowing that it was stolen, and that he received it for his own gain or to prevent the owner from again possessing it, must be established beyond a reasonable doubt. Proof of these elements constituting the crime, however, may be by circumstantial evidence. In the case of *Gunther* v. *People,* 139 Ill. 526, this court said: "Counsel insist that the evidence fails to show that plaintiff in error received the watch from the one who stole it. But it is not indispensable that such evidence shall be direct. That fact may be proved by circumstances. The presumption against the plaintiff in error by reason of the possession of the property recently stolen, not satisfactorily explained, is, that he himself stole the property; but his declaration that he received it from another may be taken as against him and in support of the indictment as sufficient evidence that he received it from the thief, rather than that he stole it himself."

If the rule was otherwise, it would, in most cases, be impossible to sustain a conviction for receiving stolen property, knowing that it had been stolen, for the purposes declared to be felonious by the statute.

In this case, the facts that liquor was found in the possession of plaintiff in error soon after the theft; that it was liquor of the same brands and contained in similar bottles, were circumstances tending to show that the liquor found in the possession of plaintiff in error was a part of the stolen property. The place and the circumstances under which it was found, together with plaintiff in error's own explanation of the circumstances under which he received it, were all competent evidence bearing upon the question of whether or not he received it, knowing it to have been stolen for the purposes condemned by the statute. The weight of such evidence was for the jury.

Plaintiff in error next contends that the court erred in refusing to quash the indictment because it is claimed there was no proper record showing the return of the indictment. It is admitted that there was no record in the criminal record book of the return of the indictment. There was a record, however, of the return of the indictment entered and recorded in the chancery record of the court. The record shows that beginning sometime in the year 1940, the clerk had, inadvertently or otherwise, entered the records relating to the return of indictments, and to proceedings in criminal cases, in this chancery record, and not in a separate criminal record of the court. The chancery record is as much a record of the court as any other record kept by the clerk. There is no magic in the particular book in which the record is kept, or in the name, or designation, endorsed upon the label attached thereto. The only question material is, was it a record of the court? The criminal record of the court is the record made and kept by the clerk wherever such entries may be found. The mere fact that the clerk had inadvertently, or otherwise, entered the records of criminal cases in the chancery record book, and not in a separate criminal record, was immaterial. The fact that the indictment was legally returned by the grand jury was recorded in a book labeled "The Chancery Record," in which the chancery records were also kept. The record book, however it may be designated, was one of the records of the court and was amply sufficient as a record of the return of the indictment. This objection cannot be sustained.

Plaintiff in error also objects to instructions Nos. 1 and 2, given on behalf of the People. These instructions in substance told the jury that possession of stolen property by the accused, soon after the theft, imposed upon the defendant the burden of explaining such possession, and unless he had satisfactorily explained such possession, the jury would be justified in finding him guilty. The instruc-

tions further told the jury that such possession was sufficient in itself to authorize conviction unless the defendant had overcome this presumption by evidence sufficient to create a reasonable doubt of his guilt. Possession of stolen property soon after a theft has been committed, if unexplained, is evidence that the person in whose possession the property is found is guilty of the wrongful taking, but such possession is not evidence of guilty knowledge of the accused that the property had been stolen, when he received it. Such guilty knowledge is an essential element of the crime of receiving stolen property. (*People* v. *Rubin,* 361 Ill. 311; *People* v. *Brooks,* 340 id. 74; *People* v. *Knight,* 323 id. 567; *People* v. *Miller,* 292 id. 318; *People* v. *Schallman,* 273 id. 564.) An instruction containing language similar to that contained in instructions 1 and 2, given in this case on behalf of the People, was expressly condemned by this court in *People* v. *Prall,* 314 Ill. 518. It was error to give these instructions without limiting them to the larceny count in the indictment. *People* v. *Lardner,* 296 Ill. 190; *People* v. *Rubin, supra.*

A further objection is made that these instructions improperly assumed that the whiskey found in the possession of plaintiff in error was a part of the stolen property in controversy. The instructions are not subject to this criticism. They should not, however, have been given, for the reasons already stated.

It is further objected that it was error for the court to permit the State's attorney to show by his cross-examination that plaintiff in error had been convicted, in the Federal court in St. Louis, of transporting a stolen automobile in interstate commerce. It has been repeatedly held by this court that a former conviction cannot be proved by cross-examination of the defendant. It can only be proved by the record of such conviction. (*People* v. *Brocamp,* 307 Ill. 448.) However, there was no proper objection

made to such testimony in this case. Plaintiff in error is therefore in no position to urge the objection.

It is further insisted by plaintiff in error that there is no proof in the record of his age. Such proof was necessary in order to enable the court to enter a proper judgment. The jury cannot fix the age of a defendant, where such finding is material, by merely observing him during the trial. There must be some evidence on which to base such finding. The jury cannot fix the age of the defendant from its observation of him during the trial in the absence of any other evidence. *People* v. *Davidson*, 240 Ill. 191; *Wistrand* v. *People*, 213 id. 72.

Plaintiff in error, in his brief in this court, has severely criticized the trial judge, not only for his rulings, but for what is asserted in the brief as improper remarks, interruptions, general attitude and language indicating a hostile attitude towards the plaintiff in error during the trial. This objection may be disposed of by the statement, which is amply supported by the record, that such criticism is wholly without warrant. It has no foundation whatever in the record. There is nothing in the record to justify the attacks made on the trial judge, and the criticism is wholly unwarranted. Nothing further need be said as to this objection, except that a careful reading of the entire record demonstrates that the charges made by counsel are purely imaginary and wholly unsupported by the record. Such an unjust and unfounded attack on the trial judge merits the most decisive disapproval of this court.

For the errors above indicated, the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*