415 So.2d 1280 (1982)
John Morgan BARNES, Appellant,
v.
STATE of Florida, Appellee.
No. 81-1571.
District Court of Appeal of Florida, Second District.
May 12, 1982.
Rehearing Denied July 1, 1982.
*1281 Fred S. Pflaum, Sarasota, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Judge.
Appellant, John Morgan Barnes, was convicted of false imprisonment, sexual battery and aggravated battery. Though he alleges numerous errors in his jury trial, only one merits discussion. The trial court excluded the testimony of John A. LaBreche, who testified that after appellant was arrested for the assault, he, Mr. LaBreche, had seen other unidentified persons who, in his opinion, fit the description of the assailant as described to him by the investigating officer, who had been furnished the description by the victim. Appellant argues the exclusion of that opinion evidence was error. We affirm the trial court.
The evidence presented to the jury was overwhelming that the sexual battery was committed by an unknown assailant upon the victim exactly in the manner described by her. The critical issue before the jury was whether appellant was that unknown assailant. The witness, Mr. LaBreche, was initially arrested for the assault after the victim picked his photograph from a photograph line-up as the one who looked most like her assailant. When he established an alibi, the victim then identified appellant as her assailant from another photograph line-up.
The investigation of the assault centered around a bowling alley where appellant and Mr. LaBreche were members of different teams in the same league and where they had bowled the night of the assault. The victim described her assailant as wearing blue jeans and a yellow bowling shirt which had black and white stripes on the shoulders with lettering over the pocket beginning with the letters "J" and "O" and perhaps an "H." Mr. LaBreche testified for the state that on the night of the assault appellant was wearing blue jeans and the yellow bowling shirt with black stripes on the shoulders as worn by the five members of appellant's team. Of those five members, only one, the appellant, was named John.
Detective Steube testified that during his investigation he determined that on the night of the assault forty-two men had bowled there and of that number only appellant, John LaBreche and one other were named John. All of the foregoing facts pertaining to the investigation and the initial arrest of Mr. LaBreche were admitted into evidence for the jury's consideration.
We do not disagree with the principles of law cited in Judge Grimes' dissent. We do feel that there must be a more substantial connection between unidentified third persons and the crime than Mr. LaBreche's opinion derived from a physical comparison based on a double hearsay description. In each of the cases cited by Judge Grimes, there were other distinctive connections between the crime and the other person fitting the description.
Appellant's proffer of Mr. LaBreche's testimony which was excluded by the trial judge was as follows:

*1282 DIRECT EXAMINATION
BY MR. PFLAUM:
Q Mr. LaBreche, you have been previously sworn; you are still under oath.
A Yes, sir.
Q You were arrested approximately December the 20th, is that correct?
A The nineteenth.
Q The description that was given to you of the assailant of Debra Richert was of a blond haired man, with sandy colored hair to the mid-ear and short sideburns and a mustache, is that correct?
A Yes, sir.
Q Wearing a yellow bowling shirt with black and white stripes?
A Yes, sir.
Q And driving a white pick-up truck?
A White Chevrolet.
Q The following week after you were arrested, did you have the occasion to come into contact with someone who fit that description?
A Two weeks after that, after the Wednesday night rape, I was leaving the bowling alley about ten after nine with my wife, and we were parked directly in front of the building, facing the building, and I observed a white pick-up truck with a utility box in the back, with some lettering on the side, pull up to the right of me, some paces away, and I had started my vehicle, and I turned on my headlights and the person walked directly in front of my headlights, and I kind of followed him as he approached the opening to the door, where there was light.
This man was six-foot tall, blond hair, mustache, and had a yellow bowling shirt on, with black lettering.
Q Did it have stripes on the collar?
A Yes, sir. And why I observed that is because I was arrested for it and that I knew there were three Johns involved at that bowling alley and in that league.
I was talking to my wife about it and I got the tag number of the vehicle, I believe, and after that night I had spotted another General Motors white pick-up truck with a utility box, with a blond, with sideburns and the mustache and whole business, three consecutive times within two weeks, and I also took the license plate number of those vehicles.
Q Did you have your eye out for a person fitting that description?
A Yes, sir.
Q That was because you were arrested on this very same charge?
A Yes, sir.
MR. PFLAUM: I have no further questions.
MR. HOWES: I have some cross-examination.
CROSS-EXAMINATION
BY MR. HOWES:
Q Who did you report this information to that you had?
A At first, I didn't really report it to nobody. I have kind of an office in the office  I'm a sales representative for Texaco. I made notes of the license plate and put them on some cards, my personal cards, on the back, and I observed the time and place at which I saw the people.
And later on, I believe it was about  I forget where I was. I believe that I had run into Officer Steube and I told him abou (sic) it.
And I also believe that I encountered Fred at one point when they took a deposition from me, and I don't know when that was, but I had mentioned it at that point about the white pick-up truck.
Q Did you mention it in your deposition?
MR. PFLAUM: No, he didn't.
MR. HOWES: Excuse me, I want the witness to answer.
THE WITNESS: I don't remember.
Q (BY MR. HOWES) You don't remember whether you did?
A I don't remember if I was even asked. I know that I thought it was important, and I might have said something after the  during  after your taking the deposition.
Q That was just to Mr. Pflaum, is that correct?

*1283 A You were there, I believe.
Q But you didn't tell me that, though, right?
A I don't know if you were still in the room or not.
Q Let me ask you this: This description that you say you got, who did you get that from?
A Detective Steube.
Q Did you see whether or not there was a name on the front of the shirt when you saw this person?
A No; I  just as he walked by the car, I could see the shirt, and I said to my wife, "That's a yellow bowling shirt, a blond hair  there's the black letters."
No, I did not see any name.
We think there are several significant reasons why the testimony was properly excluded. Immediately after finding help, the victim described her assailant and the white Ford pickup truck he was driving. She was familiar with that model truck and positively and repeatedly identified it as a Ford. Mr. LaBreche first testified that he saw an unidentified individual driving a Chevrolet truck. Next, he testified that he saw someone on another occasion fitting the hearsay description driving a General Motors white pickup truck. Mr. LaBreche testified that in all he saw vehicles on three occasions and each time he took the license numbers of the different vehicles. He did not proffer the license numbers, nor was it clear from the testimony whether Mr. LaBreche, prior to the proffer at trial, reported this information to anyone. As the Florida Supreme Court said in Lawrence v. State, 45 Fla. 42, 44, 34 So. 87, 88 (1903):
The question, to what extent one charged with a crime may defend by showing some third person to be the guilty party, has often been before the courts, and is discussed in the following cases: Banks v. State, 72 Ala. 522; Levison v. State, 54 Ala. 520; State v. Beaudet, 53 Conn. 536, 4 Atl. 237, 55 Am.Rep. 155; State v. Hawley, 63 Conn. 47, 27 Atl. 417; Commonwealth v. Abbott, 130 Mass. 472; State v. Davis, 77 N.C. 483; State v. Gee, 92 N.C. 756; State v. Lambert, 93 N.C. 618; Ex parte Gilstrap, 14 Tex. App. 240; Murphy v. State, 36 Tex.Cr.R. 24, 35 S.W. 174; Crookham v. State, 5 W. Va. 510. None of them authorizes an accused to defend by raising so vague a suspicion of guilt in another as is attempted here, and the court below committed no error in excluding such testimony.
Mr. LaBreche's testimony was simply an offer of opinion testimony by a lay witness. In Roberson v. State, 40 Fla. 509, 522, 24 So. 474, 478 (1898), the court said that "[t]he opinion of a witness as to the identity of a person seen by him is admissible in all cases where the witness has a previous personal acquaintance with or knowledge of such person, and bases his opinion upon such acquaintance or knowledge." In the case here, Mr. LaBreche's description of the unidentified third persons depended entirely on what the victim told an investigating officer, who in turn told the witness. As such it was based totally on hearsay. In Henderson v. State, 94 Fla. 318, 332, 113 So. 689, 694 (1927), the court held:
Testimony as to identity is in the nature of opinion evidence. Provided he bases his testimony on his own knowledge and not on information furnished by another, the opinion, belief, judgment, or impression of an ordinary (non-expert) witness as to the identity of a person or an object is admissible in evidence.
Section 90.701, Florida Statutes (1979), allows opinions of lay witnesses only when based upon what the witness has "perceived." Other jurisdictions have also held that the type of hearsay testimony proffered here was properly excluded. In People v. Turner, 91 Ill. App.2d 436, 235 N.E.2d 317 (1968), the court had for consideration the identification of an assailant which was based upon an artist's sketch and a "wanted" bulletin. In rejecting the identification testimony, the court said:
Further, where a witness has no personal knowledge of the facts but his knowledge is derived entirely from information given by another, his testimony is incompetent and inadmissible as hearsay. People v. Grizzle, 381 Ill. 278, 44 N.E.2d 917, 920 (1942).

*1284 In the case at bar, the sketch drawn by the police artist is his written out-of-court belief as to the likeness of the assailant. Further, it is not his belief based on what he had observed but his belief based on what he had been told by the prosecutrix. .. .
... .
... It was error to permit the officer to testify that Turner matched the complainant's description of her assailant. That was testimony that only she could give. Allowing him to testify that the defendant looked like the sketch amounted to allowing him to state a conclusion based upon the initial conclusion of a third party. It also violated the rule against hearsay evidence.
Id. 235 N.E.2d at 320, 321.
AFFIRMED.
OTT, J., concurs.
GRIMES, A.C.J., dissents with opinion.
GRIMES, Acting Chief Judge, dissenting.
Under the peculiar facts of this case, I am convinced that the court committed reversible error in refusing to allow Mr. LaBreche to testify that he has seen another man who fit the description given by the victim of the crimes of which appellant was accused.
When the guilt of a third person is inconsistent with the guilt of a defendant, the defendant may always present evidence that the third person committed the crime in order to show that he did not do so. Lindsay v. State, 69 Fla. 641, 68 So. 932 (1915); 1 C. Torcia, Wharton's Criminal Evidence § 195 (13th ed. 1972); 1 J. Wigmore, Evidence § 139 (3d ed. 1940). However, in order to be admissible, the evidence must closely link the third person to the commission of the crime. 1 C. Torcia, supra. The question that must be considered here, then, is whether Mr. LaBreche's testimony concerning the third person was closely enough tied to the crime with respect to time, place and accuracy of description to be relevant to the question of whether appellant or someone else committed the assault on Miss Richert.
As Wigmore notes, rulings on whether evidence of mistaken identity is relevant are rare. 1 J. Wigmore, supra, § 142, at 579 n. 5. However, three recent cases deal with the issue and are helpful to a determination of the relevance of Mr. LaBreche's testimony. In United States v. Armstrong, 621 F.2d 951 (9th Cir.1980), the defendant was charged with robbing the American National Bank in Sacramento, California. At his trial, the defense attempted to introduce evidence that another person who matched the description of the robber had used $3,000 in bait bills taken from the bank to purchase a car the day after the robbery occurred. The district court excluded the evidence as irrelevant. However, on appeal, the Ninth Circuit reversed, stating:
We hold it was error to exclude as irrelevant testimony that another man, matching the description of the American National Bank robber, had used bait money taken in that robbery to purchase a car. Fundamental standards of relevancy, subject to the discretion of the court to exclude cumulative evidence and to insure orderly presentation of a case, require the admission of testimony which tends to prove that a person other than the defendant committed the crime that is charged.
621 F.2d at 953.
The second pertinent case is United States v. Robinson, 544 F.2d 110 (2d Cir.1976), cert. denied, 434 U.S. 1050, 98 S.Ct. 901, 54 L.Ed.2d 803 (1978). There, the defendant was also charged with committing a bank robbery, and the government produced a bank surveillance photograph which it contended showed him to be one of the robbers. However, the defense attempted to introduce testimony that the individual in the picture also resembled one Eli Turner who was suspected by local police officials of committing two armed robberies in the area. The trial court excluded this evidence, but on appeal, the court said:
Robinson claims that the exclusion of the ... testimony was error. We agree.

*1285 The central issue in this case was one of identification. The government maintained that the third man in the bank was Robinson, and Robinson claimed that it was not... .
It was entirely proper for Robinson to disprove the government's contention by proving that the third man was someone else. 1 J. Wigmore, Evidence § 34 (3d ed. 1940) [hereinafter cited as Wigmore]; 2 Wigmore § 413. If it was, then obviously Robinson was innocent. Evidence to the effect that the third man in the bank resembled an individual suspected of two armed robberies that occurred in the Bridgeport area within six days prior to the bank robbery was clearly probative of the issue Robinson sought to prove, namely, that the third man was someone else.
544 F.2d at 112-13 (footnotes omitted).
The final case is Siemon v. Stoughton, ___ Conn. ___, 440 A.2d 210 (1981). In that case, the defendant was found guilty of a sexual assault on a sixteen year old girl who testified that while playing with her brother and sister on property in her neighborhood, a naked man appeared and assaulted her. At the trial, defense counsel failed to introduce evidence that less than one year before the assault, an incident had occurred in the same town where a nude man had approached a woman who was outside on her property and had fled only after the woman's brother started to yell. Some time after his conviction, the defendant filed a petition for habeas corpus seeking a new trial on the grounds that his counsel acted incompetently in not presenting the testimony concerning the other incident with a nude man. In the course of granting the petition for habeas corpus and ordering a new trial, the court said:
We conclude that this testimony would have been admissible. A defendant may give evidence concerning a third party's involvement with the crime, as long as there is some evidence which directly connects the third party with the crime. State v. Giguere, ___ Conn. ___, ___, 439 A.2d 1040 (42 Conn.L.J., No. 51, pp. 19, 21) (1981); State v. Marshall, 166 Conn. 593, 601, 353 A.2d 756 (1974); State v. Perelli [125 Conn. 321, 5 A.2d 705], supra; annot., 121 A.L.R. 1357, 1362. It is not, however, enough to show that another had a motive to commit the crime. State v. Perelli, supra, 125 Conn. 328, 5 A.2d 705. Here, there was more than mere evidence of a motive on the part of a third party. There was testimony to show that a white, nude man with black hair, a beard and without a Spanish accent was on the scene of the crime some months earlier. The description matched the composite drawing of the assailant. Moreover, the plaintiff does not have black hair and there was testimony that he did not have a beard on the date of the crime. The victim testified that her assailant did not have an accent. The habeas court found that the plaintiff had a Spanish accent. The unusual fact of encountering a nude man in the same area on three occasions was enough to connect the nude man to the crime with sufficient directness to render the evidence admissible.
___ Conn. at ___, 440 A.2d at 214.
While the factual situations in these three cases vary from each other and from the present case, they are sufficiently analogous to demonstrate that the court here erred in excluding Mr. LaBreche's testimony concerning the third person. LaBreche's evidence was more than a general statement of having seen someone who matched the description of the criminal. The police obviously felt that the crime had been committed by someone who frequented the bowling alley. Appellant presented a witness who had good reason to be conscious of the crime and the description of the perpetrator because he, himself, had once been identified as the assailant. He was prepared to tell the jury that he had seen another person at the bowling alley only two weeks following the crime who matched the assailant's description, who was wearing a bowling shirt like the one worn by the assailant, and who was driving a truck of the same type and color as described by the victim. Appellant was entitled to have the jury hear this evidence.
The cases cited in the majority opinion are not relevant. All but Lawrence v. *1286 State deal with testimony sought to be introduced by the prosecution, not with the question of when a defendant is entitled to introduce evidence that a third person committed the crime. In Lawrence the "vague" testimony which the defendant was precluded from introducing concerned only the motive that another person may have had to commit the crime rather than evidence directed toward identifying a third party as the culprit. Detective Steube originally noted on his report that the victim had told him that the truck driven by her assailant was "possibly" a Ford truck. Be that as it may, the discrepancy over the make of the vehicles would go to the weight of the evidence rather than its admissibility. The majority's point about double hearsay might be valid if it were not for the fact that Mr. LaBreche had personal knowledge of the assailant's description because the victim first identified him as that person.
Because the wrongfully excluded testimony went to the issue of identity and because identity was the major issue in the case, the error was clearly prejudicial to appellant. Accordingly, I would reverse and remand for a new trial.