480 So.2d 140 (1985)
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, William A. Blanchard and Clayton Blanchard, Jr., Appellants,
v.
Beth Anne VOSBURGH, South Carolina Insurance Company, a Foreign Corp., and Anne L. Fleming, Appellees.
Nos. 83-1135, 83-1880 and 83-1896.
District Court of Appeal of Florida, Fourth District.
December 11, 1985.
Rehearings Denied January 17, 1986.
*142 David F. Crow of Paxton, Crow, Bragg & Austin, P.A., West Palm Beach, and David F. Cooney of Conrad, Scherer & James, Fort Lauderdale, for appellants.
Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellee Vosburgh.
Marjorie Gadarian Graham and Neil J. Hayes of Jones & Foster, P.A., West Palm Beach, for appellees South Carolina Ins. Co. and Fleming.
DELL, Judge.
This consolidated appeal arises from a final judgment awarding appellee Beth Anne Vosburgh (Vosburgh) damages for personal injuries, and from an order and final judgment which denied appellants' claim for contribution from appellees Anne L. Fleming (Fleming) and South Carolina Insurance Company (South Carolina). Nationwide Mutual Fire Insurance Company (Nationwide) also appeals from a second amended final judgment which determined the amount of its liability.
Vosburgh suffered personal injuries while riding as a passenger on a motorcycle owned by Clayton Blanchard and operated by William Blanchard. The motorcycle collided with a vehicle driven by Anne Fleming. At the time of impact, Vosburgh's helmet came off and landed some distance away from her. She sustained serious personal injuries which included a skull fracture and concussion, a comminuted displaced fracture of the shaft of the femur, a loss of hearing in her right ear, and permanent brain damage. Expert testimony established that her brain disfunction will affect her ability to obtain and to sustain gainful employment.
Fleming and South Carolina reached an agreement with Vosburgh to settle her claim against them for the amount of Fleming's policy limits ($10,000). Vosburgh agreed not to enforce judgment against Fleming and South Carolina in excess of $10,000; however, she did not dismiss them from the pending action. The trial court denied appellants' motion to drop Fleming and South Carolina as parties to the trial.
At the conclusion of the evidence the trial court granted Vosburgh's motion for a directed verdict on the issue of comparative negligence. The jury awarded Vosburgh damages in the amount of $696,483.00 and found William Blanchard sixty percent negligent and Fleming forty percent negligent.
Post trial, the court granted Fleming and South Carolina's motions to limit their liability to $10,000 and to bar any claim by appellants for contribution. The trial court also denied Nationwide's motion to set aside the judgment against it, or in the alternative to limit its liability to $100,000, and held that the policies issued by Nationwide to William Blanchard and Clayton Blanchard provided combined coverage in the amount of $200,000.
Appellants raise several points on appeal. Initially, they contend that Vosburgh's testimony concerning salaries for stewardesses, teachers and interpreters constituted hearsay and that the admission of this evidence caused the jury to render an excessive verdict. Appellants then argue that the trial court should not have granted Vosburgh's motion for a directed verdict on the issue of comparative negligence and that it should have granted their motion to drop Fleming and South Carolina as party defendants. In addition, appellants contend that the trial court erred when it assessed costs against them and denied their claim for contribution from Fleming and South Carolina. Finally, Nationwide contends that the trial court should have limited its liability to $100,000.
Appellants argue that Vosburgh relied upon inadmissible hearsay to establish the amount of her claim for diminution of earning *143 capacity and that the admission of this testimony caused the jury to render an excessive verdict. Vosburgh testified that she had intended to work as a stewardess, teacher or interpreter, and that she had inquired as to the starting salary for each of these occupations. In response to further questions and over an objection on the ground of hearsay, she stated an amount for each occupation.[1]
Vosburgh contends that we should not construe her testimony as inadmissible hearsay but rather as a lay witness opinion. She cites several cases as support for this contention. However, none of these cases leads to the conclusion that lay witness opinion testimony may be based solely upon information furnished by a third party.[2] Section 90.701, Florida Statutes (1983), provides that a lay witness may testify in the form of an opinion when:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he has perceived to the trier of fact without testifying in terms of inferences or opinions and his use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
(2) The opinions and inferences do not require a special knowledge, skill, experience or training.
The Law Revision Council Note indicates that Section 90.701 permits a lay witness to testify to things which the witness has perceived such as distance, time, size, weight, form and identity. The Council Note goes on to state:
This section retains the traditional objective of putting the trier of fact in possession of an accurate reproduction of the event, while permitting the witness to testify in language more characteristic of ordinary conversation. The Comment to Model Code of Evidence Rule 401 explains:
Where a witness is attempting to communicate the impressions made upon *144 his senses by what he has perceived, any attempt to distinguish between so-called fact and opinion is likely to result in profitless quibbling. Analytically no such distinction is possible. The English common law does not attempt to prevent a witness from describing his experiences in terms including inferences. If he hasn't the skill or experience required for drawing inferences, he will not be allowed to state them. His inferences, when received may not be worth much, but they can do no harm. The court will not permit them to be given more weight than the basis upon which they are built will sustain, and that basis can be uncovered on cross-examination if the judge has not required that it be given in advance.
We find nothing in Section 90.701 or the Council Note which would permit a witness to testify about something she had been told rather than something she perceived.
The Second District Court of Appeal concluded in Barnes v. State, 415 So.2d 1280 (Fla. 2d DCA), petition on review denied, 424 So.2d 760 (Fla. 1982), that Section 90.701 only permitted a witness to give an opinion based on his perceptions. The Barnes court stated:
Section 90.701, Florida Statutes (1979), allows opinions of lay witnesses only when based upon what the witness has "perceived." Other jurisdictions have also held that the type of hearsay testimony proffered here was properly excluded. In People v. Turner, 91 Ill. App.2d 436, 235 N.E.2d 317 (1968), the court had for consideration the identification of an assailant which was based upon an artist's sketch and a "wanted" bulletin. In rejecting the identification testimony, the court said:
Further, where a witness has no personal knowledge of the facts but his knowledge is derived entirely from information given by another, his testimony is incompetent and inadmissible as hearsay. People v. Grizzle, 381 Ill. 278, 44 N.E.2d 917, 920 (1942).
Id. at 1283.
Here, Vosburgh based her testimony on information obtained from an undisclosed third party. She had not worked as a teacher or a stewardess and did not testify that she had any personal knowledge concerning the starting salary for these occupations. She apparently interpreted Spanish at some point in time, but the record does not contain an adequate predicate to support her testimony that a language interpreter starts at approximately $14,000 per year. After considering the record, the briefs, and the argument of counsel, we hold that Vosburgh's testimony concerning the starting salaries for stewardesses, teachers and language interpreters should have been excluded as inadmissible hearsay.
Next, appellants argue that the admission of Vosburgh's hearsay testimony caused the jury to render an excessive verdict.
The general rule as to error is stated at 5 Am.Jur.2d, Appeal and Error, § 776:
"... Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it... ."
Anthony v. Douglas, 201 So.2d 917, 919 (Fla. 4th DCA 1967), cert. denied, 210 So.2d 222 (Fla. 1968). We do not view Vosburgh's testimony as trivial, formal, or merely academic since it formed the basis for a major part of the damages claimed by her. In closing argument, her attorney used her hearsay testimony to establish that the value of her lost earning capacity ranged from $167,000 to $365,000. This element of damage amounted to at least one-fourth and up to approximately one-half of the total jury award.

*145 In Florida harmless error has been defined as one that does not injuriously affect the substantial rights of the complaining party... . It has also been held that errors which do not affect the outcome of the trial are not harmful. The test is whether, but for the error complained of, a different result would have been reached by the jury.
Id.
Since we must assume that the jury considered all of the evidence presented, we must also conclude the jury would not have reached the amount of its award in the absence of her hearsay testimony. Therefore we reverse the jury's award of damages.
In their next point, appellants challenge the trial court's order granting Vosburgh's motion for directed verdict on the issue of comparative negligence. Appellants asserted the defense of comparative negligence based on an alleged violation of Section 316.211(1), Florida Statutes (1983), which requires a person riding a motorcycle to wear protective headgear securely fastened. The evidence shows only that Vosburgh wore a helmet at the time of the accident and that it flew off at the point of impact. Appellants did not introduce any evidence which would tend to prove that she failed to securely fasten her helmet in violation of the statute or that it would not have come off had it been securely fastened. In Cuozzo v. Ronan & Kunzl, Inc., 453 So.2d 902 (Fla. 4th DCA 1984), we held that the trial court erred when it failed to grant a directed verdict on the issue of comparative negligence where the defendant presented no evidence tending to prove that defense:
Having alleged comparative negligence, an affirmative defense, appellees bore the burden of proof. Hough v. Menses, 95 So.2d 410 (Fla. 1957). Where no evidence exists tending to prove comparative negligence, the issue should not be submitted to the jury. Borenstein v. Raskin, 401 So.2d 884 (Fla. 3d DCA 1981).
Id. at 903-04.
We find no error in the trial court's order granting a directed verdict on the issue of comparative negligence.
Appellants then argue that the trial court should have dropped Fleming and South Carolina as party defendants. Appellants moved to drop Fleming and South Carolina as party defendants because Vosburgh agreed not to enforce judgment against Fleming and South Carolina in excess of $10,000. They cite Florida Rule of Civil Procedure 1.250 in support of this contention. Rule 1.250(b) provides in part that "[p]arties may be dropped by order of court... on such terms as are just." The plain language of this rule is discretionary and appellants have failed to cite any authority which would establish that the trial court abused its discretion when it refused to drop Fleming and South Carolina as parties to the trial.
We find no merit in appellants' contention that the trial court did not have the issue of contribution before it or in the alternative, that it failed to conduct an evidentiary hearing to determine the good faith of the settlement between Vosburgh, Fleming and South Carolina Insurance. Appellants raised the issue of contribution as an affirmative defense and announced at trial that they had a pending cross-claim for contribution against Fleming and her carrier. This issue was properly before the court. Post trial, the trial court conducted an unreported hearing on Fleming and South Carolina's motion to limit liability to $10,000, and to bar any claim for contribution. We relinquished jurisdiction to permit the parties to reconstruct a record. However, the trial court refused to approve the reconstructed record. Without a transcript of the proceedings, we do not know what evidence the trial court reviewed when it determined that:
[T]he Agreement Not to Enforce Judgment between the Plaintiff and the Defendants, Anne L. Fleming and South Carolina Insurance Company, was in *146 good faith and limits the liability of Anne L. Fleming and South Carolina Insurance Company to $10,000.
Appellants have failed to demonstrate error on this question. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979).
Finally, Nationwide contends that the trial court erred when it entered judgment against it for $200,000. At the time of the accident, Clayton Blanchard (owner of the motorcycle) and William Blanchard (driver of the motorcycle) had separate liability insurance policies issued by Nationwide with $100,000 coverage each. Nationwide did not raise a policy defense before or during trial other than to assert that its liability as to Clayton Blanchard was limited by the express terms of its policy. After entry of final judgment, Nationwide moved to vacate the final judgment and asserted that Vosburgh's complaint failed to state a cause of action against it because of her failure to attach copies of the insurance policies to the complaint. Nationwide has waived this argument since failure to state a cause of action cannot be raised post trial. See Fla.R.Civ.P. 1.140(h)(2) and Curcio v. Cessna Finance Corp., 424 So.2d 868, 872 (Fla. 4th DCA 1982).
Nationwide also argues that Vosburgh failed to establish her rights as a third-party beneficiary under the policy and alternatively that they did not have an opportunity to be heard on their coverage defense when the trial court denied their motion to set aside the judgment or reduce the judgment to the limits of the owner's policy. The record does not support Nationwide's argument. Nationwide appeared at each of the hearings on this question and agrees that the trial court had certified copies of the insurance policies and William Blanchard's answers to interrogatories before it when it considered Nationwide's motion to set aside the judgment. From this record we hold that the trial court had sufficient evidence to determine that the policies issued by Nationwide afforded coverage applicable to Vosburgh's claims in the amount of $200,000.
In conclusion, we affirm the verdict on the issue of liability in favor of Vosburgh. We also affirm the trial court's order and judgment limiting Fleming and South Carolina Insurance Company's liability to $10,000, that part of the final judgment which determined Nationwide's applicable combined coverage in the amount of $200,000, and the order assessing costs against appellants. We reverse the judgment of damages in the amount of $696,483 and remand this case for a new trial on the issue of damages only.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
LETTS, J., and YAWN, THERON A., Jr., Associate Judge, concur.
NOTES
[1] The disputed testimony consisted of the following exchange:

Q. Did you inquire when you wanted to pursue the field of being an airline stewardess what the approximate starting salary was?
A. I have inquired, yes, sir.
Q. What was it?
MR. BRAGG: Objection; hearsay.
THE COURT: No. Let's see what her answer is.
THE WITNESS: It is around nineteen five.
MR. BRAGG: Excuse me, Your Honor, did you overrule my objection?
THE COURT: Yes sir.
BY MR. REITER:
Q. And what about teaching, did you inquire as to what starting teachers would make in Palm Beach County?
A. Yeah. Here in Palm Beach it's roughly twelve five, twelve six.
MR. BRAGG: I would object and move to strike. It's hearsay, not based on her personal knowledge, and it's obviously what someone else told her.
....
THE COURT: All right. The objection is overruled. Mr. Reiter may continue his examination.
BY MR. REITER:
Q. Ms. Vosburgh, we were talking about airline stewardesses starting salary. What figures did you say it was for school teachers?
A. Twelve six.
Q. Lastly, the language interpreter  by the way, did you enjoy interpreting Spanish?
A. Yes, sir.
Q. Do you know the starting salary for an interpreter?
MR. BRAGG: Same objection, Your Honor.
THE COURT: Objection overruled. You may continue.
THE WITNESS: Thank you. Fourteen thousand a year, roughly.
[2] Anderson v. Zweigbaum, 150 Conn. 478, 191 A.2d 133 (1963), permitted a plaintiff to give his opinion as to the reasonable value of his own services; Calvert Fire Ins. Co. v. Grotts, 136 So.2d 836 (La. App. 1962), held it was error to exclude the testimony of an insurance adjuster as to the correctness and costs of repairs to an automobile where the adjuster had been adjusting such claims for many years and had personal knowledge of the value of such services; Builders Steel Co. v. Commissioner of Internal Revenue, 179 F.2d 377 (8th Cir.1950), held that the trial court should have allowed the testimony of contractors and architects as to the value of the petitioner's services where the contractors and architects were men of practical experience, had done business with the petitioner, knew its officers, and were familiar with their abilities and the nature of the work they had done; Hill v. Marion County, 238 So.2d 163 (Fla. 1st DCA 1970), held that the trial court should have admitted a property owner's testimony as to the value of her own property.