646 So.2d 746 (1994)
Yolanda FINO, as Personal Representative of the Estate of Gerald J. Fino, Deceased, Appellant,
v.
Nancy NODINE, Ruth E. Wheeler, Raymond H. Wheeler, and Felipe Baten, Appellees.
No. 93-1324.
District Court of Appeal of Florida, Fourth District.
August 17, 1994.
Order Correcting Opinion on Denial of Motions for Rehearing, Clarification, and Certification January 18, 1995.
*747 Adam H. Lawrence of Lawrence & Daniels, and Malove, Kaufman & Marbin, P.A., Miami, for appellant.
John Ward Smith and Terry A. Slusher of Roth, Edwards & Smith, P.A., Orlando, for appellees.
PER CURIAM.
The plaintiff/personal representative of the decedent, Gerald Fino, appeals a final judgment rendered pursuant to a jury verdict in favor of appellees/defendants. We reverse and remand for a new trial, the second point on appeal being persuasive.
Appellee/defendant Nancy Nodine and appellee/third-party defendant Felipe Baten were involved in an accident at a dangerous intersection when Baten allegedly ran a flashing red light and a stop sign. Nodine had a flashing yellow cautionary light. As a result of the accident, the car driven by Nodine was propelled into decedent, a pedestrian, causing his death. A default judgment was entered against Baten and the case against Nodine went to trial. The case against Nodine was premised on the theory that she was inattentive and unresponsive to the hazards of the intersection at which the accident occurred and that, although Baten was negligent in proceeding through the intersection without stopping, Nodine's negligence also contributed to the accident. The jury returned a verdict for Nodine.
Portions of Nodine's deposition testimony were introduced by the plaintiff and later by the defense. Nodine appeared at trial, but was not called to testify by either side. Baten's deposition testimony was also presented. Baten did not appear at trial.
Nodine's deposition testimony and the testimony of several witnesses established that the intersection was dangerous due to the fact that it was new and that visibility was obscured by landscaping.
In addition to the deposition testimony of Nodine and Baten regarding their own versions of the circumstances surrounding the accident, two eyewitnesses, Carol Koch (by way of her videotaped deposition) and James Walker testified. An accident expert witness was presented by each side.
Koch's videotaped deposition was played for the jury. Koch testified as to what she observed. Defense counsel then asked Koch:
From your view of the accident and what occurred in the accident, was there anything that the station wagon [Nodine's vehicle] could have done to avoid the accident?
Plaintiff's counsel objected on the basis that the question called for an expert opinion and that it was a jury question. The trial court overruled the objection, expressing the belief that it was Koch's way of trying to describe what she saw with her own eyes. Koch was then permitted to answer:
Other than what I saw the vehicle doing, I would say no. And meaning that she attempted to stop just by, you know, braking, which is what she had to have been doing because of the pitch of the car.
Previously, defense counsel had asked Koch, who worked as an armed security officer, "How observant of a person are you?" Over plaintiff's objection as to the form of the question, Koch was allowed to describe herself as "very observant, simply because *748 that's the main criteria for being a security officer." In response to defense counsel's question as to whether Koch was "more or less trained to be observant," Koch responded "Yes, they don't hire you unless you have proven you're observance [sic] in those jobs."
Plaintiff's counsel also objected on hearsay grounds to admission of the following statement by Koch in response to a question by plaintiff as to whether Koch remembered two men at the scene of the accident, one of whom was determined to be Walker, the other testifying witness:
I spoke with a couple of people. There was [sic] two men who said that they had been traveling east bound on 22nd that had seen everything that had happened, and he came over and gave me his name in case the police needed to contact him.
The other eyewitness, Walker, testified as to what he observed. Defense counsel then asked Walker:
Based upon your observations is there anything that you feel the station wagon [Nodine's vehicle] could have done to avoid the accident?
Plaintiff's counsel objected on the ground that the question called for an expert witness opinion. The court overruled the objection. Walker answered, "Emphatically none."
During closing arguments, defense counsel argued that none of the eyewitnesses saw Nodine do anything wrong. Counsel emphasized Koch and Walker's opinions that the accident was unavoidable:
Ms. Koch was asked what she saw the station wagon doing, or was there anything that you can think of that the station wagon could have done to avoid the accident and her answer was she did not know of anything that she could have done to avoid that accident.
....
Mr. Walker, what does he say? It is remarkably similar to what Carole Koch says... . Is there anything that the station wagon driver, or the driver in the station wagon could have done to avoid the accident? Again, you rely on your recollection of what he said. I would suggest to you that his response was emphatically not.
As appellee points out, these comments were not isolated, but were included in a broader argument highlighting the facts presented by the testimony of these witnesses.
Initially, it should be noted that the decision of whether or not to allow lay witness opinion testimony is within the discretion of the trial court. Hughes v. Canal Ins. Co., 308 So.2d 552 (Fla. 3d DCA 1975).
"Generally, a lay witness may not testify in terms of an inference or opinion, because it usurps the function of the jury. The jury's function is to determine the credibility and weight of such testimony." Floyd v. State, 569 So.2d 1225, 1231-32 (Fla. 1990) (citation omitted), cert. denied, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991). However, a lay witness is permitted to testify in the form of an opinion or inference as to what he perceived if two conditions are met:
(1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he has perceived to the trier of fact without testifying in terms of inferences or opinions and his use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
(2) The opinions and inferences do not require a special knowledge, skill, experience, or training.
§ 90.701, Fla. Stat. (1991).[1] "Lay witness opinion testimony is admissible if it is within the ken of an intelligent person with a degree of experience." Floyd, 569 So.2d at 1232.
Opinion testimony of a lay witness is only permitted if it is based on what the witness has personally perceived. § 90.701, Fla. Stat. (1991); Nationwide Mut. Fire Ins. Co. v. Vosburgh, 480 So.2d 140 (Fla. 4th DCA 1985). Acceptable lay opinion testimony typically involves matters such as distance, time, *749 size, weight, form and identity. Vosburgh, 480 So.2d at 143. Before lay opinion testimony can be properly admitted, a predicate must be laid in which the witness testifies as to the facts or perceptions upon which the opinion is based. Beck v. Gross, 499 So.2d 886, 889 (Fla. 2d DCA 1986), rev. dismissed by 503 So.2d 327 (Fla. 1987). "[B]efore one can render an opinion he must have had sufficient opportunity to observe the subject matter about which his opinion is rendered." Albers v. Dasho, 355 So.2d 150, 153 (Fla. 4th DCA), cert. denied, 361 So.2d 831 (Fla. 1978). Appellant argues that the opinions of Koch and Walker were not admissible because their testimony indicated that they did not adequately perceive the events leading up to the accident. We agree. See also Groener v. Briehl, 135 Ariz. 395, 661 P.2d 659 (App. 1983).
As appellant points out, Koch could not testify as to Nodine's speed, when she began to brake, what she could or could not see, or as to her conduct as she approached the intersection, including her attentiveness. Therefore, Koch's perceptions did not support her opinion that there was nothing that Nodine could have done to avoid the accident. Accordingly, the trial court abused its discretion in overruling appellant's objection and admitting this lay opinion.
Moreover, the necessary predicate was not laid before Walker was allowed to offer his opinion. Although Walker's perception of Nodine's speed offers some support of his opinion, Walker's testimony regarding the landscaping and his distance indicate that he did not have a "sufficient opportunity to observe the subject matter about which his opinion is rendered." Albers, 355 So.2d at 153. Furthermore, Walker offered no testimony as to when Nodine began to brake or slow down. Nor could he testify as to Nodine's attentiveness. Accordingly, it was also error to allow Walker's opinion that there was nothing Nodine could have done to avoid the accident.
Furthermore, both eye-witnesses testified as to what they perceived without difficulty. Applying the conditions set out in section 90.701, the opinion testimony of these witnesses was unnecessary to communicate what they had perceived. In testifying about what they observed, the witnesses used specific estimates of distances, speed, relative location and the positions of the cars. In fact, the challenged opinion testimony was given only in response to defense counsel's very specific question of whether the witnesses felt there was anything that Nodine could have done to avoid the accident. Thus in communicating their perceptions, the witnesses themselves did not find it necessary to offer this opinion of unavoidability and only did so when directly asked.
Although section 90.703, Florida Statutes (1991), permits opinion testimony on an ultimate issue to be decided by the trier of fact, "section 90.703 does not imply the admissibility of all opinions [on an ultimate issue]. If the witness' conclusion tells the trier of fact how to decide the case, and does not assist it in determining what has occurred, then it is inadmissible." Town of Palm Beach v. Palm Beach County, 460 So.2d 879, 882 (Fla. 1984) (although expert witness could testify as to whether benefits were received and as to importance of benefits, could not opine whether benefit was "real and substantial").[2]See also Zwinge v. Hettinger, 530 So.2d 318, 323 (Fla. 2d DCA 1988). In sum, in the present case, although opinions as to speed and distance were permissible, the lay opinion testimony on unavoidability did not assist the trier of fact in understanding the perceptions of the witnesses. It went beyond the perceptions of the witnesses. The inference of unavoidability should have been left for the jury to determine.
*750 The error in admitting the lay opinions was not harmless. Where the challenged lay opinion testimony "goes to one of the core questions affecting liability and we can not say with any certitude that it did not affect the percentage of negligence attributed [or not attributed to the defendant]," the error can not be said to be harmless. Albers, 355 So.2d at 154. The effect of this error was compounded by defense counsel's closing argument. Furthermore, Koch's position as a uniformed security officer and her presence at the scene of the accident, where she was in uniform and acted like a law enforcement official, again compounded the error and further removed it from the purview of harmless error. See Dinowitz v. Weinrub, 493 So.2d 29 (Fla. 4th DCA 1986) (officer's appearance coupled with years of experience could have easily influenced one or more jurors in favorable manner).
Finally, because the case must be tried again, we point out one remaining issue raised by appellant so that the trial court is advised of our disagreement with its ruling.
During closing arguments, Nodine's failure to testify also became an issue. Plaintiff's counsel was arguing to the jury that in evaluating the credibility of a witness, it is important to be able to see and hear the witness. Counsel proceeded:
One of the things I want you to bear in mind in this case is nobody in this courtroom had the opportunity of evaluating or assessing the believability 
Without any motion by the defense, the trial court then stopped the argument and, at side bar, instructed plaintiff's counsel that this was not a proper argument to make where the witness was available and could have been called by either party and suggested that a reference to the fact that Nodine did not testify would be proper if counsel also explained that either party could have called Nodine to testify. Plaintiff's counsel's argument then proceeded:
One of the things that I will not be able to do is evaluate the believability of the defendant, Nancy Nodine. Both sides had the opportunity to call Mrs. Nodine, however, we have the burden of presenting our case in the most favorable light based upon the witnesses supporting our case.
The defendant, however, had the burden of proving their affirmative defenses in this case and they have chosen not to call Ms. Nodine.
During its closing argument, defense counsel was permitted to comment on the plaintiff's failure to put Nodine on the stand.
Another possibility would have been if I had not [read excerpts of Nodine's deposition into evidence to fill in blanks left by excerpts offered by plaintiff,] I could have put Nancy Nodine on during our case and I could have skipped that. The problem is if I didn't read the portions of her deposition that are left out then it looks like I am attempting to hide something from you that she said in her deposition. You heard her testimony.
The big deal is the very first thing that was said up here is she didn't testify. Isn't that horrible. They got up and they read her deposition and said, "Ladies and gentlemen, she was sitting right there, right there. You don't want to read her deposition. You want her live and you want to ask her questions live and call her as a witness." They have the opportunity because they go first. They call every witness. They could have called every single witness. I wouldn't have anything to call, but they didn't do it. They tried to say that somehow it is bad that we didn't do it.
In Geiger v. Mather of Lakeland, Inc., 217 So.2d 897 (Fla. 4th DCA 1968), cert. denied, 225 So.2d 528 (Fla. 1969), this court said:
It is a general rule that the failure of a party to appear or testify as to material facts within his knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention. 31A C.J.S. Evidence § 156(4). This appears to be the clear weight of authority throughout the country. There are apparently no cases from this jurisdiction dealing with the failure of a party to testify, although there are two cases which involve the issue of the failure of a party's witness to testify. *751 Wigmore states that there is no reason to distinguish between a party and another witness in drawing an unfavorable inference from the failure to testify. Appellants contend that our broad discovery rules requiring a party to submit to deposition, and permitting the adverse party the right to put such deposition in evidence, should be a distinguishing feature. We do not agree that this is a valid basis for applying a different standard to a party-witness from that applied to a non-party witness. Thus, as a purely abstract statement of law, the general rule would hold true in this jurisdiction.
The unfavorable inference which may be drawn from the failure of a party to testify is not warranted when there has been a sufficient explanation for such absence or failure to testify. Among other reasons which might be considered as sufficient explanation would be a showing that the party has no personal knowledge or memory of the facts in issue, or a showing that any testimony of such party would be purely cumulative of that already established by other competent evidence.
Id. at 898-99 (emphasis added) (footnotes omitted). Geiger did not answer the first question here, i.e., whether parties and witnesses should be treated the same on the question of availability. Availability is clearly required before this negative inference can be argued where it is a witness, rather than a party, that has failed to appear or testify. State v. Michaels, 454 So.2d 560 (Fla. 1984); Maxfly Aviation, Inc. v. Gill, 605 So.2d 1297 (Fla. 4th DCA 1992); Bowers v. Potts, 617 S.W.2d 149 (Tenn. Ct. App. 1981).
In preventing plaintiff's counsel from embarking on an argument regarding the negative inference that could be drawn from Nodine's failure to testify, the trial court reasoned that such an argument was not allowed where Nodine was "available" and could be called by either party. While Florida courts have not directly addressed the issue of "availability" in a civil action as it pertains to the failure of a party to testify, several other states have determined that the issue of availability is irrelevant where it is a party that has failed to appear or testify. Jacobs v. Locklear, 65 N.C. App. 147, 308 S.E.2d 748 (1983), modified on other grounds, 310 N.C. 735, 314 S.E.2d 544 (1984); Silveira v. Kegerreis, 12 Mass. App. Ct. 906, 422 N.E.2d 789 (1981); Pasternak v. Mashak, 428 S.W.2d 565 (Mo. 1967), cert. denied, 390 U.S. 907, 88 S.Ct. 821, 19 L.Ed.2d 872 (1968). In applying this rule and permitting counsel to comment in closing argument on a party's failure to testify, the courts in Jacobs and Silveira both explained that it made no difference whether the party was present in court or not.[3] We agree.
The position that availability is irrelevant where a party fails to testify is supported by the policy rationales inherent in the inference. The unfavorable inference applies "only where it would be most natural under the circumstances for a party to speak, call witnesses, or present evidence." Brooks v. Daley, 242 Md. 185, 218 A.2d 184 (1966). The goal of the inference is to prevent suppression of evidence by the failure to testify. Kaniewski v. Emmerson, 44 Mich. App. 737, 205 N.W.2d 812, 813 (1973). Since the parties presumably have the most knowledge of the circumstances of the case and the most interest in how the case is resolved, it would be most natural for a party to appear and testify. Thus, it makes sense to us to permit the unfavorable inference where a party fails to testify without any show of unavailability. On the other hand, a witness may not have any great interest in the case or in making himself available for the trial. Therefore, it seems reasonable to require a showing of availability before a witness' absence can lead to the inference.
How the retrial unfolds will determine how Geiger is to be applied. Assuming, however, that Nodine's deposition is again introduced, a sufficient explanation, such as under Geiger, is necessary to explain her failure to testify. Finally, a reintroduction by appellant of Nodine's deposition would not, per se, preclude the inference on retrial. See Victorson v. Milwaukee & Suburban Transp. *752 Co., 70 Wis.2d 336, 234 N.W.2d 332, 342 (1975). Whether appellee's live testimony would be cumulative would be determined by the trial court at that time, under Geiger.
ANSTEAD and GLICKSTEIN, JJ., concur.
STONE, J., dissents with opinion.
STONE, Judge, dissenting.
I would affirm, deeming any errors harmless.
NOTES
[1] Prior to adoption of section 90.701 in 1979, the general common law rule precluded lay witnesses from testifying in the form of an opinion or inference. Law Review Council Note, § 90.701, Fla. Stat. Ann. (1979). Lay witnesses were permitted to testify only to the facts they perceived, although exceptions were made. Id. Therefore, the pre-1979 cases cited by appellant on this particular point are of limited use in deciding this issue.
[2] Although Town of Palm Beach was concerned with the testimony of an expert witness, the court's conclusion is equally applicable to lay witness testimony because the court was giving a direct interpretation of section 90.703, which does not distinguish between expert and lay witnesses. See also Rowles v. Woronwitch, 369 So.2d 362 (Fla. 4th DCA) (Downey, C.J., concurring specially) (although decided before the rule change regarding lay witnesses, concurrence indicates that lay opinion testimony as to whether driver could have avoided accident is objectionable), cert. denied, 379 So.2d 208 (Fla. 1979).
[3] Michigan courts, on the other hand, apply the witness rule to a party and have decided that the inference does not operate where a party is "equally available or accessible to both parties by process of court." Cavanaugh v. Cardamone, 147 Mich. App. 159, 383 N.W.2d 601, 603 (1985); Kaniewski v. Emmerson, 44 Mich. App. 737, 205 N.W.2d 812 (1973).