DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RISTO JOVAN WYATT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-4377

[ May 20, 2015 ]

**CORRECTED OPINION**

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert L. Pegg, Judge; L.T. Case No. 312010CF000462B.

Marcia J. Silvers of Marcia J. Silvers, P.A., Miami, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Risto Jovan Wyatt appeals his judgment of conviction and sentence for trafficking in 28 grams or more of cocaine and for perjury. Because the trial court erred in excluding prior exculpatory testimony from a witness at a civil forfeiture hearing, we reverse and remand for a new trial. We affirm as to appellant's other points on appeal without discussion.

Appellant and his co-defendant, Christopher Brown, were under investigation for drug trafficking. Police monitored their phone calls over a three-month period via an authorized wiretap. A surveillance team also followed appellant and Brown on trips to Orlando, where police believed they were purchasing cocaine to distribute in Indian River County. During the surveillance, law enforcement officers never saw appellant or Brown in physical possession of cocaine.

Based on information received from the wiretap, officers decided to stop appellant and Brown on one of their return trips to Indian River County,

expecting to seize cocaine that they believed appellant and Brown were carrying. When officers stopped and searched the car, they did not find any drugs in the car, but they discovered a plastic bag containing approximately $16,000 on the backseat. Officers seized the money and allowed appellant and Brown to leave.

The Indian River County Sheriff initiated forfeiture proceedings regarding the seized money. Appellant, Brown, and Rashonda James, the owner of the car, were joined as claimants. An assistant state attorney, from the same state attorney's office that prosecuted appellant in this case, represented the Sheriff's office at the forfeiture hearing. The assistant state attorney sought to establish probable cause that the money seized from the car was intended to be used to purchase narcotics. He cross-examined Ms. James at the forfeiture hearing.

Ms. James testified that the money seized from her car belonged to her. She said she was in a romantic relationship with appellant and that he often borrowed her car. Ms. James testified that she had placed the money in the back seat of the car behind the driver's side. It was inside a Walmart bag and tied up in a black jacket. Ms. James maintained that appellant and Brown did not know that the money was in the car.

Ms. James, a pharmacist, testified that she had been withdrawing money from her bank account to set aside for savings for over a year. On the day her car was stopped, she had placed the money in her car because she was planning to meet someone to buy rental property. She explained that she intended to pay cash for the investment property because she hoped to get a lower price.

Appellant testified that he borrowed Ms. James's car that day without her knowledge. Both appellant and co-defendant Brown testified that they did not know there was a Walmart bag filled with money on the backseat of the car.[1] The trial court found that there was not sufficient probable cause for forfeiture and ordered that the money be returned to Ms. James.

At trial, the law enforcement officers who monitored the calls testified and provided foundation evidence for the admission of fifty-six telephone recordings. During the phone calls, appellant and Brown discussed purchasing "polos," "rims," and "t-shirts." The officers testified that those were code words for quantities of cocaine.

Mark Leakes was arrested and charged with conspiracy to traffic in over

[1] They were both charged with perjury based on this testimony.

400 grams of cocaine.  At trial, he testified that he supplied co-defendant Brown with cocaine in Orlando.  He conducted most of his business with Brown, but appellant accompanied Brown during some of the transactions.

At trial, appellant sought to introduce a transcript of Ms. James's testimony at the forfeiture hearing, as former testimony of an unavailable witness under section 90.804(2)(a), Florida Statutes.  The state and appellant stipulated that Ms. James was an unavailable witness because, if called to testify, she intended to exercise her Fifth Amendment right against self-incrimination.  The trial court, however, sustained the state's objection to admission of Ms. James' former testimony and excluded it.

On appeal, appellant argues that the trial court abused its discretion in excluding Ms. James's former testimony at his criminal trial.  He asserts that her testimony was admissible under section 90.804(2)(a), because the sheriff's office, through the assistant state attorney's cross-examination, had an opportunity and similar motive to show that Ms. James's testimony was not trustworthy and to establish that the seized money belonged to appellant and was intended for the purchase of narcotics.  We agree.

The standard of review for a trial court's admission of evidence is abuse of discretion.  *Padgett v. State*, 73 So. 3d 902, 904 (Fla. 4th DCA 2011).  The trial court's discretion, however, is limited by the rules of evidence.  *Id.*

Section 90.804(2), Florida Statutes (2010) provides an exception to the hearsay rule, when the declarant is unavailable, for:

(a) *Former testimony.*--Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

A declarant is unavailable to testify if the declarant asserts his or her Fifth Amendment right against self-incrimination.  *Roussonicolos v. State*, 59 So. 3d 238, 240 (Fla. 4th DCA 2011) (citing *Henyard v. State*, 992 So. 2d 120, 126 n.3 (Fla. 2008)).  As the state stipulated, Ms. James was unavailable to testify at appellant's trial.

In *Garcia v. State,* 816 So. 2d 554 (Fla. 2002), the Florida Supreme Court reversed the double murder convictions of a defendant who unsuccessfully sought to introduce the prior testimony of his co-defendant. *Id.* at 565-66. The co-defendant, who was tried first in a severed trial, testified and confessed to committing the murders alone; he denied that the defendant was involved. Because the co-defendant invoked his Fifth Amendment right during Garcia's trial and refused to testify, Garcia attempted to introduce the co-defendant's trial testimony under section 90.804(2)(a), as former testimony of an unavailable witness. The trial court denied the request. On appeal, the Florida Supreme Court reversed, concluding that the trial court erred in excluding the former testimony.

The *Garcia* Court noted that "because Garcia was not tried with [co-defendant], the State did not have the identical motive in cross-examining [the co-defendant] as it would have had if the State tried [co-defendant] and Garcia together." *Id.* at 564. The court went on to point out, however, that "section 90.802(2)(a) does not require an identical motive but only a 'similar motive.'" *Id.* The supreme court considered the state's motive at both trials as similar. In both instances, the motive was "to discredit [the witness's] testimony and show it to be not worthy of belief." *Id.* at 565. The court stated:

> Moreover, the failure to allow the jury to hear this testimony deprived the jury of important additional evidence that could have been critical to assessing Garcia's guilt. Indeed, where Garcia's alleged involvement in the crimes hangs on the testimony of one individual . . . the jury was entitled to consider the testimony of the [co-defendant], who took the stand in his own trial and specifically testified that Garcia was not involved in these murders. In this case, to prevent the jury from hearing the prior recorded testimony of the [co-defendant], which the State subjected to cross-examination, is to apply the hearsay rule "mechanistically to defeat the ends of justice." For all these reasons, the exclusion of [co-defendant's] prior sworn testimony constituted error, which . . . was not harmless beyond a reasonable doubt.

*Id.* at 565-66 (internal citation omitted).

In *Roussonicolos,* 59 So. 3d at 241, we followed *Garcia* in holding that a witness's testimony at a pre-trial bond hearing was admissible in the defendant's criminal trial under the former testimony exception. There, the defendant and the witness were charged with fraud. The theory of

4

defense was that the witness acted alone. At the defendant's bond hearing, the witness testified that he acted alone and was solely responsible for the fraud. However, by the time of the defendant's trial, the witness had invoked his Fifth Amendment right against self-incrimination and was unavailable to testify. In concluding that the witness's prior testimony at the pre-trial bond hearing was admissible at the defendant's criminal trial, we explained:

> We do not read Section 90.804(2)(a) to require that, in order for prior testimony to be admitted as an exception to the hearsay rule, the opponent of the evidence must have the same motivation to examine the witness in both the prior proceeding and the one in which the prior testimony was being introduced. Nor, as the State suggests, must the scope of inquiry conducted at the bond hearing be the same as the scope of the examination at trial. *Garcia*, 86 So. 2d 554. To require such a high standard would render this hearsay exception useless.

*Id.* at 241.

We further explained:

> The State had an opportunity to cross-examine [the witness] at the bond hearing. It also had a "similar motive" at both the trial and the bond hearing, specifically "to discredit [the witness's] testimony and show it to be not worthy of belief" given the exculpatory nature of [the witness's] testimony.

*Id.* at 242-43.

Similarly, in this case, the assistant state attorney, acting on behalf of the sheriff's office, had an opportunity to cross-examine Ms. James at the forfeiture hearing. The state attorney's office had a "similar motive" at both the trial and the forfeiture hearing, specifically "to discredit the witness's testimony and show it to be not worthy of belief," given the exculpatory nature of Ms. James's testimony, i.e., the currency did not belong to the defendant and was not to be used to purchase drugs. Accordingly, based on these facts and circumstances, the trial court erred in excluding Ms. James's former testimony.

We conclude that the exclusion of Ms. James's testimony was not harmless. The state, as the beneficiary of the error, has not proven beyond a reasonable doubt that the error in excluding exculpatory testimony

about the ownership and intended use of money did not contribute to the verdict. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). No drugs were found in the car, and the state relied heavily upon the $16,000 in currency seized from the car to support its theory that appellant and co-defendant Brown intended to purchase cocaine from Leakes. At the forfeiture hearing, Ms. James claimed ownership of the currency and provided an explanation for its presence in the car. Failure to allow the jury to hear this testimony deprived the jury of critical evidence in determining appellant's guilt.

*Reversed and Remanded for a new trial.*

STEVENSON and CIKLIN, JJ., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**