# Third District Court of Appeal

## State of Florida

Opinion filed April 6, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2410
Lower Tribunal No. 14-2034
_____


**L.L., a juvenile,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Richard Hersch, Judge.

Carlos J. Martinez, Public Defender, and Jeffrey Paul DeSousa, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Marlon J. Weiss, Assistant Attorney General, for appellee.


Before SHEPHERD, ROTHENBERG and SCALES, JJ.

SHEPHERD, J.

This is an appeal from a withheld adjudication and judicial warning for marijuana possession. The issue before us is whether a police officer's identification of marijuana, arrived at by sight and smell alone, is admissible experience-based opinion testimony. Because the officer's opinion was based on his personal knowledge and perception and resulted from a process of everyday reasoning, we hold that the officer's opinion was admissible as lay opinion testimony under Section 90.701, Florida Statutes.

## BACKGROUND

This case is a typical marijuana possession case. L.L., a juvenile, was charged with one count of simple possession of cannabis under Section 893.13(6)(b), Florida Statutes. At the adjudicatory hearing below, the State relied, in part, on the testimony of Officer Joseph Munecas, who offered his opinion that the substance in question was marijuana. Prior to trial, L.L. requested a Daubert[1] hearing to challenge the admissibility of Officer Munecas's opinion testimony. The judge declined to hold a pre-trial hearing, but agreed to conduct the hearing during the course of the trial.

The prosecutor began by laying the foundation for Officer Munecas's opinion testimony, asking the officer about his field experience and training. The trial judge, apparently adverting to Professor Charles W. Ehrhardt's seminal work

---

[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

2

on evidence,[2] stopped the prosecutor from formally tendering the witness as an expert, instructing the prosecutor as follows:

> What you want to do is you're permitted to ask an opinion . . . . And just for trade craft, it's probably wise at that point to turn to the Court and say, Your Honor, I'm about to ask this witness for an opinion which you don't have anything in this case to ask an opinion about yet . . . but that way it triggers the other side to see if they want to do any voir dire.

Officer Munecas testified that on January 5, 2014, he was out patrolling when he spotted L.L. crouching down in the driver's seat of a parked vehicle. Officer Munecas approached the vehicle on foot, and observed L.L. reach over and under the passenger seat. The officer testified that when he knocked on the window and L.L. rolled it down, he smelled a "strong odor of marijuana." L.L.'s objection to this testimony as "improper expert opinion" was overruled. When asked what he meant by "a strong odor of marijuana," Officer Munecas explained:

> It has a distinct and very unique smell unlike any other. And over the years through my experience I recognize the smell very quick. I mean it's something that it's very unique, and it's very distinct. And when you smell it it's unlike any other smell, and it's very identifiable.

---

[2] See Charles W. Ehrhardt, Ehrhardt's Florida Evidence § 702.1 (2015 ed.) ("It is not necessary for counsel to formally proffer or tender a witness as an expert to the court. In fact, it may be an improper comment by the court if the witness is 'declared' an expert before the jury." (footnotes omitted)).

3

Upon smelling what he believed was marijuana, Officer Munecas asked L.L. if he had any weapons or narcotics in the car. In response, L.L. admitted he had marijuana and handed over a clear plastic bag from the center console.[3] The bag, having been properly preserved through the chain of custody, was produced at trial and Officer Munecas, once again over L.L.'s objection, was permitted to offer his opinion that the substance inside was marijuana. Officer Munecas explained his conclusion as follows:

> Well the first thing he [L.L.] told me it was when he gave it to me. I asked him if he had any and he gave it to me. Also the smell, you can smell through this bag how strong the marijuana smells. Like I said it's a distinct and a very unique odor unlike any other odor. When you look at it it's a green leafy substance, it has hairs, it has crystals and it's just something that through field experience that over time I've kind of developed a knack for I guess you could say, and like I said I've effected numerous arrests, hundreds of arrests for the substance.

Officer Munecas also searched L.L.'s vehicle and found a rolled cigarette under the front passenger seat. At trial, and again over L.L.'s objection, the officer identified the item as a marijuana cigarette:

> Because the way Number 1 that it smelt. It had like I said the distinct and very unique odor. Then also if you look at it on the ends of it it's a green leafy substance which is

---

[3] L.L.'s motion below to suppress confessions, admissions, and statements was granted in part and denied in part. The trial court denied the motion as to L.L.'s first statement that he had marijuana and granted the motion as to other admissions L.L. made after he handed Officer Munecas the bag. Neither party challenges the court's ruling on L.L.'s motion to suppress.

in it which is consistent with what was inside this bag. So due to the smell, due to the appearance of the green leafy substance of, you know, the hairs on it, the crystals on it, that led me to believe that is a marijuana cigarette.

During cross-examination, counsel for L.L. repeatedly asked Officer Munecas how he was able to identify the substance as marijuana. The officer maintained that his opinion was "just based on my experience and based on my senses." Counsel pressed the officer further, asking whether his experience-based methodology satisfied any of the traditional Daubert factors. For instance, counsel asked whether Officer Munecas used the scientific method, whether he collected any data to formulate his opinion, whether there were any peer reviewed articles determining the reliability of identifying cannabis by sight and smell, or whether he was aware of the false positive rate regarding his method of identifying the substance. Officer Munecas was unable to answer counsel's pointed questions beyond asserting that he had seen and smelled marijuana on numerous occasions in the past and therefore was able to identify it when he saw and smelled it on this occasion. The officer finally conceded: "Sir, I am a police officer, I'm not a scientist."

Although the trial judge expressed doubts as to whether Officer Munecas's "testimony is based upon sufficient facts or data[,] is the product of reliable principles and methods, and whether he has applied the reliable principles and methods in this case[,]" the judge ruled that the testimony was admissible under

5

our prior cases allowing such testimony, which were decided before the adoption of the <u>Daubert</u> standard by the 2013 amendments to the Florida Evidence Code. L.L. appeals, challenging the continued viability of this practice.

ANALYSIS

This case turns on the application of certain sections of Florida's Evidence Code that govern the admissibility of opinion testimony. A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion; however, the trial court's interpretation of the evidence code is reviewed *de novo*. <u>Almond v. State</u>, 1 So. 3d 1274, 1276 (Fla. 1st DCA 2009). "Where, as here, a Florida evidentiary rule is patterned after its federal counterpart, 'federal cases interpreting comparable provisions are persuasive and routinely looked to for interpretive guidance.'" <u>Bank of N.Y v. Calloway</u>, 157 So. 3d 1064, 1071 n. 3 (Fla. 4th DCA 2015), <u>reh'g denied</u> (Mar. 3, 2015), <u>review denied</u>, 177 So. 3d 1263 (Fla. 2015) (quoting <u>Carriage Hills Condo., Inc. v. JBH Roofing & Constructors, Inc.</u>, 109 So. 3d 329, 334 n.1 (Fla. 4th DCA) rev. dismissed, 130 So. 3d 692 (Fla. 2013)).

### Section 90.702: Expert Opinion Testimony

The parties focused primarily on Section 90.702, which sets forth admissibility requirements for expert opinion testimony. In 2013, the Florida Legislature amended Section 90.702 to pattern it after Rule 702 of the Federal

6

Rules of Evidence.  Ch. 2013-107, Laws of Fla.  As amended, Section 90.702, Florida Statutes, reads as follows:

> 90.702 Testimony by experts
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion **or otherwise, if:**
> **(1) The testimony is based upon sufficient facts or data;**
> **(2) The testimony is the product of reliable principles and methods; and**
> **(3) The witness has applied the principles and methods reliably to the facts of the case.**

(amendments in bold).  One of the Legislature's stated purposes in amending Section 90.702 was "to adopt the standards for expert testimony in the courts of this state as provided in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), <u>General Electric Co. v. Joiner</u>, 522 U.S. 136 (1997), and <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999), and to no longer apply the standard in <u>Frye v. United States</u>, 293 F.2d 1013 (D.C. Cir 1923) in the courts of this state." Ch. 2013-107, Laws of Fla. (Preamble to § 90.702).  The Legislature also intended to prohibit the much criticized[4] pure opinion exception to the <u>Frye</u> admissibility standard as provided in <u>Marsh v. Valyou</u>, 977 So. 2d 543 (Fla. 2007).  <u>Id.</u>

---

[4] <u>See e.g.</u>, David L. Faigman, et al., <u>3 Mod. Sci. Evidence</u> § 21:11 (2015-2016 Edition) ("Florida, like a number of other Frye states, mistakenly resisted efforts to apply admissibility criteria to anything other than general principles . . . . This

Daubert, Joiner, and Kumho Tire, known as the Daubert trilogy, are the three United States Supreme Court cases that together articulate the Daubert standard. In Daubert, the Court referenced five factors courts could use to determine the reliability of expert scientific testimony: (1) whether the expert's theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted in the relevant scientific community. 509 U.S. at 593-94. In Joiner, the Court held "that abuse of discretion is the proper standard by which to review a district court's decision to admit or exclude scientific evidence." 522 U.S. at 146. And, in Kumho Tire, the Court held the Daubert factors not only apply to scientific knowledge but to technical or other specialized knowledge as well. 526 U.S. at 147-48. The Kumho court also explained the Daubert inquiry is a flexible one and the factors do not constitute a definitive checklist or test. Id. at 150; see also id. at 158-59 (Scalia, J., concurring) ("I join the opinion of the Court, which makes clear that the discretion it endorses—trial-court discretion in choosing the manner of testing expert reliability—is not discretion to abandon the gatekeeping function. I

remained the situation in Florida until 2013, when the legislature enacted a statute that effectively moved Florida into the Daubert cloumn [sic]."); Stephen E. Mahle, The "Pure Opinion" Exception to the Florida Frye Standard, Fla. B.J., February 2012, at 41.

think it worth adding that it is not discretion to perform the function inadequately. Rather, it is discretion to choose among reasonable means of excluding expertise that is *fausse* and science that is junky.").

L.L. argues that Officer Munecas's opinion testimony did not satisfy Daubert's reliability standard. The State counters by arguing the Daubert factors are "flexible and nonexhaustive." However, we do not decide this case under Daubert's expert opinion testimony framework because the admissibility of Officer Munecas's experience-based testimony is more appropriately analyzed under Section 90.701.

**Section 90.701: Lay Opinion Testimony**

We begin with the text of Section 90.701, Florida Statutes:

> 90.701. Opinion testimony of lay witnesses
>
> If a witness is not testifying as an expert, the witness's testimony about what he or she perceived may be in the form of inference and opinion when:
> (1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
> (2) The opinions and inferences do not require a special knowledge, skill, experience, or training.

L.L. argues that Officer Munecas's testimony cannot be lay opinion testimony because it requires "specialized knowledge." We disagree. Similar to

9

its federal counterpart, Section 90.701 forbids lay opinion testimony that requires "special knowledge, skill, experience, or training." Of course, "[a]ll lay witnesses have some specialized knowledge—knowledge relevant to the case that is not common to everyone . . . . Indeed, that is why all witnesses—lay or expert—are called: to get what they know about the case that other people do not." Paul F. Rothstein, Fed. Rules of Evidence Rule 701 (3d ed.). The text of the Federal Rules offers more guidance than does Section 90.701 because it specifies that lay opinion testimony is not based on "specialized knowledge **within the scope of Rule 702**." Fed. R. Evid. 701 (emphasis added). With this in mind, the question is not whether the opinion requires specialized knowledge, as all opinion testimony does, but whether the specialized knowledge is sufficiently specialized to fall within the scope of Section 90.702. See Rothstein, supra, Rule 701.

The Advisory Committee Notes to Rule 701 prove instructive on this point, distinguishing between specialized knowledge within the scope of Rule 702 and personal knowledge: "courts have permitted lay witnesses to testify that a substance appeared to be a narcotic, so long as a foundation of familiarity with the substance is established." Fed. R. Evid. 701 advisory committee's note to 2000 amendment. This is because "[s]uch testimony is **not based on specialized knowledge within the scope of Rule 702, but rather is based upon a layperson's personal knowledge**." Id.; see also § 90.604, Fla. Stat. ("Except as

10

otherwise provided in s. 90.702, a witness may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter.") Similarly, Professor Imwinkelried (who is cited several times by the United States Supreme Court in Daubert) explains that in drawing the line between lay and expert testimony,

> the judiciary should bear in mind that the real basis for distinguishing between lay and expert opinion testimony is whether the opinion rests in part on vicarious experience. In the past, when police officers have testified about the modus operandi for certain crimes, the courts have almost automatically leaped to the conclusion that the officer was testifying in an expert capacity. However, **the classification should turn on the experiential basis of the opinion rather than the witness' occupation**. If a patrol officer proffered the opinion based solely on his or her personal observation of that type of crime, the opinion should be categorized as lay.

Edward J. Imwinkelried, The Taxonomy of Testimony Post-Kumho: Refocusing on the Bottomlines of Reliability and Necessity, 30 Cumb. L. Rev. 185, 212 (2000) (emphasis added).

This is not a novel principle, and it is reflected in case law from around the state. See e.g., Chesser v. State, 30 So. 3d 625, 628 (Fla. 1st DCA 2010) ("Opinion evidence of matters perceived by one of the senses . . . [has] usually been admitted. Non-expert witnesses have been allowed to give opinion testimony of these matters when they have knowledge based upon their personal perception."

11

(quoting Charles W. Ehrhardt, Ehrhardt's Florida Evidence § 701.1 at 668–71 (2008 ed.))); Gonzales v. State, 95 So. 3d 1002, 1004 (Fla. 3d DCA 2012) ("The opinion must be based on personal knowledge of the facts underlying the opinion . . . . The lay witness may not rely on hearsay in forming an opinion, but the witness may base the opinion on what the witness has perceived." (citing Somerville v. State, 626 So. 2d 1070 (Fla. 1st DCA 1993))); Barnes v. State, 415 So. 2d 1280, 1283 (Fla. 2d DCA 1982) ("Section 90.701, Florida Statutes (1979), allows opinions of lay witnesses only when based upon what the witness has 'perceived.'").

Here, Officer Munecas's opinion is based solely on his personal, firsthand knowledge and what he perceived. Cf. Daubert, 509 U.S. at 592 ("Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). For instance, when asked how he was able to identify the "strong smell of marijuana" coming from L.L.'s rolled-down window, Officer Munecas explained:

> It has a distinct and very unique smell unlike any other.
> And over the years through my experience I recognize
> the smell very quick. I mean it's something that it's very
> unique, and it's very distinct. And when you smell it it's
> unlike any other smell, and it's very identifiable.

In addition to the requirement that lay opinion testimony be based on the personal knowledge and perception of the witness, the Advisory Committee Notes explain that courts should consider the witness's method of reasoning: "the distinction between lay and expert witness testimony is that **lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'**" Fed. R. Evid. 701 advisory committee's note to 2000 amendment (emphasis added) (quoting State v. Brown, 836 S.W.2d 530, 549 (1992)); see also Floyd v. State, 569 So. 2d 1225, 1232 (Fla. 1990) ("Lay witness opinion is admissible if it is within the ken of an intelligent person with a degree of experience . . . . We find the officers' testimony within the permissible range of lay observation and ordinary police experience."). As one scholar has explained:

> [T]he distinction lies in **whether the witness's reasoning process entails a reliable methodology beyond everyday reasoning**. **A lay witness, however experienced, offers no methodology beyond ordinary reasoning**. An expert is equipped to draw more sophisticated, yet still reliable, inferences. The crux of expert testimony is that it presents inferences that are supported through the application of a reliable methodology. Thus, the witness who relies on experience to support an expert opinion cannot simply claim insights arrived at by applying everyday reasoning to that experience base, but must explain the methodology employed to reach that opinion. An experienced witness who does not bring such methodology to bear should be subject to the restrictions of the lay opinion rule.

13

Anne Bowen Poulin, Experience-Based Opinion Testimony: Strengthening the Lay Opinion Rule, 39 Pepp. L. Rev. 551, 578-79 (2012) (emphasis added)).

One important reason the Daubert standard imposes a more demanding reliability inquiry upon expert opinion testimony is that the opinion results from a methodology or reasoning process that might be foreign to the trier of fact. See Kumho Tire 526 U.S. at 149 ("And whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest "upon an experience confessedly foreign in kind to [the jury's] own.") (quoting Learned Hand, Historical and Practical Considerations Regarding Expert Testimony, 15 Harv. L. Rev. 40, 54 (1901)). But in cases such as the one now before us, even if the trier of fact does not have the personal experience necessary to identify the substance in question, the reasoning process is not "foreign in kind." Many people who have seen and smelled marijuana would be able to recognize it in the same way they recognize anything else they have seen or smelled before.[5]

_____

[5] Improperly classifying opinions that rely on everyday reasoning as expert opinion testimony could lead to absurd results. For example, appellant argues that even if L.L.'s admission were sufficient for a finding of guilt, "it is odd to rely on a juvenile's assessment that a substance is marijuana when that juvenile himself has not been qualified as an expert[.]" Assuming L.L. offered opinion testimony in the first place (he did not because his statements were made outside of court), he need not be qualified as an expert to identify marijuana if his testimony, like that of Officer Munecas, were based on sufficient personal knowledge and arrived at

14

Here, Officer Munecas's reasoning process is nothing that requires a specialist in the field of drug identification; it is reasoning familiar in everyday life.[6] See A.A. v. State, 461 So. 2d 165, 166 (Fla. 3d DCA 1984) (recognizing that "numerous cases hold that marijuana is not difficult to characterize without chemical analysis") (quoting Turner v. State, 388 So. 2d 254, 257 (Fla. 1st DCA 1980)). Moreover, Officer Munecas did not employ a methodology beyond his ordinary reasoning to arrive at his conclusion. As he explained during cross-examination:

> It's not per se a method because what you're trying to say
> is it's something that I do every single time, right? When
> I see it I know what it is. So it's something that is not --
> You know, I don't go and break down okay did I do A,
> did I do B. No, I look at it, I smell it, I see it and it is
> what it is.

Finally, we hasten to add that although the more demanding Daubert admissibility standard does not apply to lay opinion testimony, there is nevertheless a reliability inquiry. Not only must lay opinion testimony be based on the witness's personal knowledge, section 90.604, Florida Statutes, and

---

through a process of everyday reasoning.

[6] Professor Imwinkelried suggests everyday reasoning is "a comparative judgment, employing a generalization to evaluate a case-specific fact or facts" where the generalization is based largely on firsthand knowledge, and information about the case-specific facts is acquired exclusively through personal observation. Edward J. Imwinkelried, Distinguishing Lay from Expert Opinion: The Need to Focus on the Epistemological Differences Between the Reasoning Processes Used by Lay and Expert Witnesses, 68 SMU L. Rev. 73, 104 (2015).

perceptions, section 90.701, Florida Statutes, but the witness must have *sufficient* personal knowledge to support the opinion. See Imwinkelried, Distinguishing, supra, at 94 ("[T]he judge must determine whether the extent of the witness's familiarity is 'sufficient.'") (quoting Fed. R. Evid. 901(b)(2) (advisory committee's note)).[7] Here, we have no difficulty concluding that Officer Munecas had sufficient personal knowledge to support his opinion that the substance was marijuana. He testified that he had years of experience identifying marijuana by sight and smell, even going so far as to claim marijuana is so predominant in the community that he sees it "practically every day."

## CONCLUSION

For the reasons outlined above, we conclude the trial court did not abuse its discretion in admitting Officer Munecas's marijuana identification testimony in this case. Officer Munecas's testimony was admissible lay opinion testimony under Section 90.701 because it was based on sufficient personal knowledge and his senses of sight and smell, and it was arrived at through a process of everyday reasoning. We therefore affirm the decision of the trial court.

Affirmed.

---

[7] As with expert opinion testimony, once lay opinion testimony clears the reliability hurdle, "[v]igorous cross-examination" is one of several "traditional and appropriate means" of attacking admissible evidence. See Daubert, 509 U.S. at 596. This is precisely what occurred below.