DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARGARET SAJIUN,** as Personal Representative of the **ESTATE OF JOSE ALBERTO SOTO SANTIAGO,**
Appellant,

v.

**DANIEL HERNANDEZ,**
Appellee.

No. 4D16-589

[August 23, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jaimie Goodman, Judge; L.T. Case No. 502012CA019229XXXXMB.

Julie H. Littky-Rubin of Clark, Fountain, La Vista, Prather, Keen & Littky-Rubin, LLP, West Palm Beach; Carlos A. Bodden and W. David Bennett of Ellis, Ged & Bodden, P.A., Boca Raton; and Laurence U.L. Chandler, Jr., Boca Raton, for appellant.

Todd R. Ehrenreich and Noel F. Johnson of Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, Miami, for appellee.

CIKLIN, J.

After a wrongful death jury trial, the personal representative of the decedent's estate recovered nothing. She believes that certain improper evidence resulted in the defense verdict, and she challenges several of the trial court's rulings. We find the trial court did not abuse the wide and sound discretion afforded to trial judges in these types of evidentiary rulings, and we affirm.

This case arose from a collision between a motorcycle driven by the decedent, Jose Alberto Soto Santiago ("motorcycle driver"), and a truck driven by the defendant, Daniel Hernandez ("truck driver"), resulting in the death of Santiago. During trial, the trial court permitted the introduction of the following evidence over the plaintiff's objection: 1) witness testimony regarding the speed the decedent motorcycle driver traveled on his motorcycle in the moments preceding the accident; 2)

evidence of the weight of the truck, which was used by the defense expert to calculate the motorcycle's speed at impact; and 3) statements the motorcycle driver's child made to a psychotherapist regarding an argument between the decedent and his girlfriend shortly before the accident.

"A trial court has wide discretion in determining the admissibility of evidence, and, absent an abuse of discretion, the trial court's ruling on evidentiary matters will not be overturned." *Kellner v. David*, 140 So. 3d 1042, 1046 (Fla. 5th DCA 2014) (citation omitted). "The trial court's discretion, however, is limited by the rules of evidence." *Wyatt v. State*, 183 So. 3d 1081, 1084 (Fla. 4th DCA 2015). "[A] trial court's decision does not constitute an abuse of discretion 'unless no reasonable person would take the view adopted by the trial court.'" *McCray v. State*, 71 So. 3d 848, 862 (Fla. 2011) (quoting *Peede v. State*, 955 So. 2d 480, 489 (Fla. 2007)). Stated another way, "[i]f reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." *Bass v. City of Pembroke Pines*, 991 So. 2d 1008, 1011 (Fla. 4th DCA 2008) (citation omitted). We review each of the challenged evidentiary issues in turn, applying this limited—and very well established—scope of review.

*Testimony Regarding Speed of Motorcycle*

Before trial, the plaintiff moved in limine to exclude the testimony of three witnesses the defense had listed but who did not actually see the accident, arguing that their testimony was not relevant, and that if it was, any probative value was substantially outweighed by the prejudicial effect of the testimony. The trial court deferred ruling on one witness, and denied the motion without prejudice with respect to the other witnesses.

One of the witnesses testified at trial that he had operated motorcycles since 1980. Based on his familiarity with motorcycles, he could tell the difference between the sounds emitted by the engines of a Japanese motorcycle and a Harley Davidson. A Harley Davidson engine has a distinct sound which has been patented.

Shortly before the accident, the witness was sitting in his backyard. A fence blocked his view of the street, but he heard the sound of a motorcycle engine. Defense counsel asked the witness what he heard, and he responded, "A motorcycle traveling at a high rate of speed, revved up." The court denied plaintiff's motion for mistrial. During a voir dire

2

of the witness, he explained that his testimony was based on his years of experience with hearing motorcycles, and that he did not have any specialized training in the sounds of motorcycle engines. The court ruled that the witness may "say based on what he heard and based on his familiarity with the motorcycles that it was going at a high rate of speed," but that he may not "speculate or guess what the speed was." The witness then testified that he had previously heard "a Japanese motorcycle rev its engine real high . . . [Y]ou can hear him going through his gears. And when it's revving really loud . . ., that means [it is] traveling at a high rate of speed." He equated that sound to the sound he heard the day of the accident. The witness testified that shortly after he heard the sound of a motorcycle revving its engine, he heard a "popping" noise, as if the motor shut off. He went to investigate and observed that a Japanese motorcycle had been involved in an accident.

Two other defense witnesses, a mother and daughter traveling together, encountered the motorcycle and testified about their observations. The daughter recalled that the "noise of [the] engine" drew her attention to the motorcycle. The motorcycle was "go[ing] by really fast" and "cutting off cars." Within minutes of losing sight of the motorcycle, she came upon the accident scene. The mother testified that the motorcycle was "making a very zoom noise, you know, as in accelerating very quickly," that the motorcycle driver "sped off very rapidly," and that he was traveling at a "much higher" rate of speed than the mother was driving, which was somewhere between 30 and 45 miles per hour. She and her daughter were so startled by the motorcycle that they commented to one another regarding "the noise, the speed, the closeness to our car." After the motorcycle passed her, it took between thirty and ninety seconds before she came upon the accident scene.

The parties' experts disputed the speed the motorcycle was traveling. The plaintiff's accident reconstruction expert testified that the motorcycle driver was traveling an average of fifty-five miles per hour, but going about sixty miles per hour at the time of impact. The defense expert opined that the motorcycle driver was going about ninety to ninety-five miles per hour at the time he braked, but could have been going faster before that point. He believed the motorcycle was going between eighty and eighty-five miles per hour at impact.

On appeal, the plaintiff argues that the three lay witnesses should not have been permitted to testify regarding their perceptions of the motorcycle's operation because their observations before the accident did not correlate to the operation of the motorcycle at the time of the accident.

3

"As a general rule, the decision of whether to permit evidence of a driver's conduct at a point some distance from the scene of the accident is left to the sound discretion of the trial judge." *Russ v. Iswarin,* 429 So. 2d 1237, 1240 (Fla. 2d DCA 1983); *see also Hill v. Sadler,* 186 So. 2d 52, 55 (Fla. 2d DCA 1966) ("Whether evidence should be admitted tending to show the rate of speed of a vehicle at a time and place other than that at the instant of, or immediately prior to, the accident depends upon the facts in the particular case, and rests largely in the discretion of the trial Judge."). Here, the mother and daughter testified as to the decedent's speed somewhere between thirty seconds (according to the mother) and two minutes at most (according to the daughter) before the accident. The other witness's testimony indicates that he heard the motorcycle engine revving up moments before the accident. The trial court's determination that the witnesses' observations were close enough in time to the accident to be relevant was within the trial court's broad discretion. *See Russ,* 429 So. 2d at 1240-41 (affirming exclusion of testimony regarding erratic driving more than a mile from accident site and three or four minutes before accident, but finding court erred in excluding testimony about the driving pattern and speed only three blocks before the accident); *Baynard v. Liberman,* 139 So. 2d 485, 487 (Fla. 2d DCA 1962) (finding that witnesses' testimony that defendant ran the two red lights south of the intersection where the crash occurred was relevant).

With respect to the witness who was sitting in his backyard, the plaintiff also argues that the trial court erred in permitting the witness to give what amounted to expert testimony when he testified that he could determine the speed from the sound of the motorcycle. This court has elaborated on lay witness opinion testimony:

> "Generally, a lay witness may not testify in terms of an inference or opinion, because it usurps the function of the jury. The jury's function is to determine the credibility and weight of such testimony." *Floyd v. State,* 569 So. 2d 1225, 1231-32 (Fla. 1990) (citation omitted), *cert. denied,* 501 U.S. 1259, 111 S. Ct. 2912, 115 L. Ed. 2d 1075 (1991). However, a lay witness is permitted to testify in the form of an opinion or inference as to what he perceived if two conditions are met:
>
> (1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he has perceived to the trier of fact without testifying in terms of inferences or opinions and his use of inferences or opinions will not

4

mislead the trier of fact to the prejudice of the objecting party; and

(2) The opinions and inferences do not require a special knowledge, skill, experience, or training.

§ 90.701, Fla. Stat. (1991). "Lay witness opinion testimony is admissible if it is within the ken of an intelligent person with a degree of experience." *Floyd*, 569 So. 2d at 1232.

Opinion testimony of a lay witness is only permitted if it is based on what the witness has personally perceived. § 90.701, Fla. Stat. (1991); *Nationwide Mut. Fire Ins. Co. v. Vosburgh*, 480 So. 2d 140 (Fla. 4th DCA 1985). Acceptable lay opinion testimony typically involves matters such as distance, time, size, weight, form and identity. *Vosburgh*, 480 So. 2d at 143. Before lay opinion testimony can be properly admitted, a predicate must be laid in which the witness testifies as to the facts or perceptions upon which the opinion is based. *Beck v. Gross*, 499 So. 2d 886, 889 (Fla. 2d DCA 1986), *rev. dismissed by* 503 So. 2d 327 (Fla. 1987). "[B]efore one can render an opinion he must have had sufficient opportunity to observe the subject matter about which his opinion is rendered." *Albers v. Dasho,* 355 So. 2d 150, 153 (Fla. 4th DCA), *cert. denied,* 361 So. 2d 831 (Fla. 1978).

*Fino v. Nodine*, 646 So. 2d 746, 748-49 (Fla. 4th DCA 1994) (alteration in original) (footnote omitted); *see also* § 90.701, Fla. Stat. (2015).

This court has recognized that a vehicle's speed "is generally viewed as a matter of common observation rather than expert opinion, and it is well settled that any person of ordinary ability and intelligence *having the means or opportunity of observation* is competent to testify to the rate of speed of such a moving object." *Lewek v. State*, 702 So. 2d 527, 532 (Fla. 4th DCA 1997) (citation omitted). The subtle twist in this case, of course, is that the witness testified to a "high rate of speed" based on sound rather than sight.

Although the witness's testimony was based on sound rather than sight, his opinion was based on his personal ordinary experience hearing the sounds that Japanese and non-Japanese motorcycle engines make when a driver accelerates. The witness's testimony was not based on a methodology requiring something beyond everyday reasoning. That

5

makes this case akin to *L.L. v. State*, 189 So. 3d 252, 259 (Fla. 3d DCA 2016) (finding no error in law enforcement officer's lay opinion testimony that substance was marijuana, where the opinion was based on officer's personal knowledge gleaned from his ordinary police experience and his reasoning process did not involve a methodology beyond his ordinary reasoning). To the extent that the plaintiff is arguing that witnesses cannot testify about the significance of sounds they heard, this argument is not consistent with the statute governing lay opinion testimony, which permits a witness to testify as to what he has personally perceived. *See* § 90.701, Fla. Stat. (2015). The statute does not limit perception to visual perception. *Id.* Indeed, in *L.L.*, the officer's opinion was based in part on the odor of the substance. *L.L.*, 189 So. 3d at 259-60 ("Officer Munecas's testimony was admissible lay opinion testimony under Section 90.701 because it was based on sufficient personal knowledge and his senses of sight and smell . . . ."). We find that the trial court did not abuse its broad discretion in permitting the witnesses' testimony regarding the speed of the motorcycle.

*Evidence of Truck's Weight*

Before trial, the defense arranged for the weighing of the truck driven by the defendant truck driver during the accident. A receipt of the weigh-in was made, reflecting the weight of the truck. Shortly before trial, the defense noticed its intent to seek admission of the weight receipt into evidence and filed an affidavit by the person who weighed the truck, attesting to the creation of the receipt.[1] The plaintiff did not file an objection. During trial, the weight receipt was admitted into evidence over plaintiff's "foundation" and "hearsay" objections. The defense expert testified at trial that he used the weight of the truck in calculating the speed the motorcycle was traveling.

---

[1] Section 90.803(6)(c), Florida Statutes (2015), provides in pertinent part:

> A party intending to offer evidence [of a business record] by means of a certification or declaration shall serve reasonable written notice of that intention upon every other party and shall make the evidence available for inspection sufficiently in advance of its offer in evidence to provide to any other party a fair opportunity to challenge the admissibility of the evidence. . . . A motion opposing the admissibility of such evidence must be made by the opposing party and determined by the court before trial. A party's failure to file such a motion before trial constitutes a waiver of objection to the evidence, but the court for good cause shown may grant relief from the waiver.

In her initial brief, the plaintiff argues that the weight receipt should not have been admitted based on the affidavit, because the affidavit was filed shortly before trial and the defense did not make the evidence available for inspection, in violation of section 90.803(6)(c), Florida Statutes.  However, the defense provided notice of its intent to rely on the affidavit in its "Trial Brief"[2] filing and thus complied with section 90.803(6)(c).  The plaintiff waived any objection to admission of the evidence by not filing an objection to the defendant's notice.  Additionally, the plaintiff does not dispute that she was aware of the weight receipt well before trial.  We find that the plaintiff has not established that the trial court abused its broad discretion in admitting the weight receipt into evidence and permitting testimony based on the weight receipt.

### Testimony Regarding Statements Made by Decedent's Child to Psychotherapist

The plaintiff's suit sought damages for "pain and suffering" on behalf of the two children who survived the motorcycle driver.  The trial court entered an agreed order which granted the defense motion to compel production of records from a psychotherapist who had treated one of the children.  Subsequently, the plaintiff listed the records as a trial exhibit.  In a joint trial exhibit list with objections filed by the parties, the plaintiff indicated that she had no objection to the defense admitting the records and deposition transcripts related to the child's treatment.

During trial, plaintiff's counsel stated that she was no longer seeking mental anguish damages and thus the psychotherapist privilege should be reinstated.[3]  Inexplicably, however, she requested the jury be instructed on pain and suffering.  The trial court ruled that the therapist's records were admissible as the plaintiff sought an instruction on pain and suffering.

---

[2] It does not appear that the "Trial Brief" was filed in response to any order entered by the trial court.  In any event, the plaintiff does not argue on appeal that the notice was defective based on the manner in which it was provided, other than to complain that it was provided shortly before trial.  On the record before us, we are not able to find that the notice was not "reasonable" notice. *See* § 90.803(6)(c), Fla. Stat.

[3] As discussed further below, the privilege does not apply insofar as communications between a psychotherapist and the patient regarding the patient's mental or emotional condition are related to a patient's claim or defense in any proceeding.

During closing argument, the defense asserted that the child told his therapist that he blamed his father's girlfriend for the accident, because she and the decedent argued before the decedent left the house, and that the decedent drove recklessly because he was blowing off steam after the argument. The jury was instructed on pain and suffering damages.

The plaintiff argues that the trial court should have restored the psychotherapist privilege once she withdrew the claim for pain and suffering damages, as her other claims did not relate to mental injury.

Section 90.503(2), Florida Statutes (2015), provides the following in pertinent part:

> A patient has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition . . . between the patient and the psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist. This privilege includes any diagnosis made, and advice given, by the psychotherapist in the course of that relationship.

The privilege may be claimed by, among other persons, the patient or the patient's attorney on the patient's behalf. § 90.503(3)(a), Fla. Stat. (2015). The statute further provides that the privilege does not apply to "communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of his or her claim or defense." § 90.503(4)(c), Fla. Stat. (2015).

Section 90.507, Florida Statutes (2015), governs waiver of privileges by voluntary disclosure and provides in pertinent part:

> A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person . . . consents to disclosure of, any significant part of the matter or communication.

The waiver of the psychotherapist privilege is not irrevocable. *See Garbacik v. Wal-Mart Transp., LLC*, 932 So. 2d 500, 503 (Fla. 5th DCA 2006); *Sykes ex rel. Sykes v. St. Andrew's Sch.*, 619 So. 2d 467, 469 (Fla. 4th DCA 1993). However, a revocation of a waiver will not reinstate the privilege as to already disclosed information. *See Bolin v. State*, 793 So.

8

2d 894, 898 (Fla. 2001) (recognizing that "information revealed after a privilege is waived cannot be concealed by reinvoking the privilege"); *Hamilton v. Hamilton Steel Corp.*, 409 So. 2d 1111, 1114 (Fla. 4th DCA 1982) ("It is black letter law that once the privilege is waived, and the horse out of the barn, it cannot be reinvoked.").

The parties do not dispute that the plaintiff initially put the son's mental condition at issue. Additionally, the record indicates that the plaintiff did not actually withdraw the claim, as she requested a jury instruction on pain and suffering. Even if the plaintiff withdrew the claim in the midst of trial, this would not reinstate the privilege as to records already disclosed. As such, the trial court did not abuse its broad discretion in admitting the records and allowing testimony regarding the records.

We find that under the abuse of discretion standard of review, the plaintiff has not established error, and we affirm.

*Affirmed.*

TAYLOR and MAY, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***