DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LISA KRAMER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-88

[April 8, 2020]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Dan L. Vaughn, Judge; L.T. Case No. 15000531CFAXMX.

Ima Ocasio-Yrady, Miami, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Allan R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

Lisa Kramer appeals her convictions of DUI manslaughter, vehicular homicide, DUI with prior convictions, and possession of cocaine. She raises numerous arguments on appeal. We agree with her that the trial court should have granted her motion to suppress, and we reverse on that ground, rendering her other arguments moot.

Kramer was involved in a collision with a motorcyclist as Kramer drove her vehicle. The motorcyclist was killed. Kramer was arrested and interrogated. Kramer contends that incriminating statements she made during the interrogation should have been suppressed, as the statements were obtained after she asserted her rights to representation and to remain silent.

The first officer to interrogate Kramer, Deputy Steven Pollock, informed Kramer of her *Miranda* rights and asked whether she "wish[ed] to talk to me." Kramer answered affirmatively and signed the consent form. The form recites the *Miranda* rights, then asks, "Do you understand each of these rights I have explained to you?" and "Having these rights in mind,

[d]o you wish to talk to me now?" The "Yes" box is checked off for each question, and Kramer's signature appears on the form. Deputy Pollock asked Kramer questions related to his determination of Kramer's impairment level, and Kramer revealed what medications she was prescribed.

Kramer was then escorted to another room where she waited for a period of time before Trooper Mark Zook and a prosecutor entered the room. Trooper Zook introduced himself and explained that he was a "traffic homicide" and "criminal investigator" and that his investigation would relate to her criminal charges. He confirmed that Kramer had previously been *Mirandized,* and he explained that Deputy Pollock did so in relation to what he "was doing," but that Trooper Zook was *Mirandizing* her for purposes of his criminal investigation. Trooper Zook then explained that he was conducting an investigation which could lead to an arrest "as early as tonight." Kramer interjected, "Please don't let that happen" and began to whimper.

Trooper Zook then read Kramer her *Miranda* rights. She indicated that she understood each right as read, answering "Yes" repeatedly. Trooper Zook then attempted to interview Kramer:

| | |
|---|---|
| **Zook:** | Having these rights in mind, do you wish to make a statement or answer questions at this time? |
| **Kramer:** | No |
| **Zook:** | I'm sorry? |
| **Kramer:** | No. |
| **Zook:** | No? |
| **Kramer:** | No. Can you repeat the question again? |
| **Zook:** | Okay. Having these rights in mind that I just read to you – |
| **Kramer:** | Right. |
| **Zook:** | Do you wish to make . . . statements or answer questions at this time? |
| **Kramer:** | [shaking head no] Definitely not. |

2

Trooper Zook persisted in asking clarifying questions even after Kramer's third "no" which then led to Kramer eventually acquiescing which produced a number of incriminating statements.

The trial court denied Kramer's motion to suppress, reasoning that under the circumstances, Trooper Zook was understandably confused when Kramer answered "No."

"As a general principle, when reviewing a ruling on a motion to suppress, an appellate court presumes the trial court's findings of fact are correct and reverses only those findings not supported by competent substantial evidence. Review of the trial court's application of the law to the facts is de novo." *Pierre v. State*, 22 So. 3d 759, 765 (Fla. 4th DCA 2009) (citation omitted). "However, this deference to the trial court's findings of fact does not fully apply when the findings are based on evidence other than live testimony." *Id.* (quoting *Parker v. State*, 873 So. 2d 270, 279 (Fla. 2004)).

"The Fifth Amendment of the United States Constitution and Article I, Section 9, of the Florida Constitution both provide for a right against self-incrimination." *Rigterink v. State*, 66 So. 3d 866, 887 (Fla. 2011). "[T]he Self-Incrimination Clause of Article I, Section 9, Florida Constitution, requires that prior to custodial interrogation in Florida suspects must be told that they have a right to remain silent, that anything they say will be used against them in court, [and] that they have a right to lawyer's help . . . ." *Traylor v. State*, 596 So. 2d 957, 966 (Fla. 1992). Further, "[u]nder Section 9, if the suspect indicates in any manner that he or she does not want to be interrogated, interrogation must not begin or, if it has already begun, must immediately stop." *Id.* A clarifying question is not permitted when an unequivocal invocation of rights is made. *See Black v. State*, 59 So. 3d 340, 346 n.6 (Fla. 4th DCA 2011) (disagreeing with holding in *Serrano v. State*, 15 So. 3d 629, 635 (Fla. 1st DCA 2009), that clarification of an unequivocal invocation of right to counsel is permissible). Additionally, a suspect cannot be said to have voluntarily reinitiated conversation after her invocation of rights where the interrogation did not cease upon the suspect's invocation of rights. *Shelly v. State*, 262 So. 3d 1, 17 (Fla. 2018).

"[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *State v. Pitts*, 936 So. 2d 1111, 1129 (Fla. 2d DCA 2006) (quoting *Michigan v. Mosley*, 423 U.S. 96, 104 (1975)). A suspect's statements after a clear invocation of his

3

rights may not be used to find that his invocation of rights was ambiguous. *See id.* at 1129-30 (quoting *Smith v. Illinois*, 469 U.S. 91, 91-92 (1984)).

Based on our review of the testimony and police station video, we find that Kramer unequivocally invoked her right to remain silent at three separate points before the commencement of the interrogation. Clearly, any further questioning should have ceased and the admission of Kramer's statements was not harmless because her statements could be taken as admissions of guilt. It cannot be said beyond a reasonable doubt that the jury did not consider her statements in deciding her guilt on the DUI-related offenses. And because the evidence at trial overlapped to some extent as to all the charges, we find the evidence was also not harmless as to the non-DUI related offenses as well.

Our reversal on the suppression ground renders moot Kramer's arguments regarding any purported evidentiary ruling errors. However, we address one of the issues in order to provide guidance in the event of retrial.[1] During trial, the state called Kramer's doctor as a witness and asked him why he was treating Kramer. Defense counsel objected based on the "physician-patient privilege." The state proffered the doctor's testimony. He testified as to specified diagnoses, the medications he prescribed Kramer, and the dosages, as well as the warning he gave her regarding driving under the influence of the medication. He also testified that he never changed Kramer's dosage or strength of a particular medication.

The state promised not to elicit testimony regarding Kramer's diagnoses but it sought to introduce the other testimony, mainly to contradict Kramer's statement to an officer that her doctor had "upped her dosage" of a particular medication, a statement the state had entered into evidence. The trial court found that Kramer's diagnoses were not relevant, but that the doctor could testify as to medications prescribed, dosages, and "effects on [Kramer's] body," and that he could also offer testimony rebutting Kramer's statement that her medication dosage was changed. The court relied on the "unique circumstances" of the case in finding the privilege did not apply, and also reasoned that the doctor would not "testify as to any communications or conversations or consultations he may have had between himself and [Kramer] relative to his treatment of her" or to any diagnoses. The court also found that the privilege did not apply because "there has already been testimony as to the amount of these substances found in [Kramer's] bloodstream, the types of drugs they are . . . and that

---

[1] The other evidentiary issue raised by Kramer was not preserved for appeal and did not constitute fundamental error.

the amounts found in [Kramer's] bloodstream were in therapeutic range." The court further found that the privilege did not apply because the evidence was being used "to rebut her alleged statements . . . to Trooper Zook at the jail." The doctor then testified as to the matters the court ruled were permissible but also testified without objection as to Kramer's diagnoses.

We begin with section 90.503, Florida Statutes (2017), which provides the following, in pertinent part:

> (2) A patient has a privilege to . . . prevent any other person from disclosing [] confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcoholism and other drug addiction, between the patient and the psychotherapist . . . . This privilege includes any diagnosis made, and advice given, by the psychotherapist in the course of that relationship.
>
> . . . .
>
> (4) There is no privilege under this section:
>
> . . . .
>
> (c) For communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of his or her claim or defense . . . .

§ 90.503(2), (4), Fla. Stat. A "confidential" communication is defined as one between the psychotherapist and patient that "is not intended to be disclosed to third persons" other than specified persons not relevant here. § 90.503(1)(c), Fla. Stat.

The court correctly excluded the testimony regarding diagnoses, albeit after engaging in a relevance analysis which we find to be an erroneous standard for the privilege objection. Further, the doctor's testimony, as permitted by the trial court, fell within the privilege, as it encompassed the doctor's treatment of Kramer, the drugs he prescribed her, advice he offered in the course of treatment, and dosage information. The privilege applies to records made for the purpose of diagnosis or treatment, and that would include the drugs prescribed by the doctor. *See Mullis v. State*, 79 So. 3d 747, 753 (Fla. 2d DCA 2011) (in a case involving section 456.057,

5

Florida Statutes, which provides that medical records relating to examination or treatment may be released without the patient's consent under specified circumstances, finding that "[a] doctor's prescription of a medication is a form of treatment").

The trial court also correctly found that no statutory exception to the privilege applied. The state argues that the doctor's testimony fell within the exception permitting disclosure of "communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of his or her claim or defense." But Kramer did not place her mental or emotional condition at issue. Rather, she made an issue of the timing of her ingestion of intoxicants. Further, whatever Kramer might have told a law enforcement officer did not place her mental condition at issue. The focus is on Kramer's defense at trial, not what she told an officer prior to trial. *See* § 90.503(4)(c), Fla. Stat. (providing for statutory exception to privilege where patient relies on mental condition as "an element of his or her claim or defense").

The state also asserts that, pursuant to section 90.507, Florida Statutes, Kramer waived the privilege by disclosing information to Trooper Zook. The statute provides the following in pertinent part:

> A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person . . . voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication.

§ 90.507, Fla. Stat. (2017). The state relies on Kramer's disclosure to Trooper Zook that the doctor increased her dosage of medication and that this was the first time she took the stronger dosage. But this was contrary to the doctor's testimony. Kramer did not waive the privilege by providing purportedly false information regarding communications and treatment. Further, she reinvoked the privilege at trial, and anything not already disclosed was not subject to being admitted at trial. *See Sajiun v. Hernandez*, 226 So. 3d 875, 882 (Fla. 4th DCA 2017) ("The waiver of the psychotherapist privilege is not irrevocable. However, a revocation of a waiver will not reinstate the privilege as to already disclosed information." (citations omitted)).

The trial court erroneously found that the privilege did not apply because the state had already admitted evidence that Kramer's blood

sample contained the prescribed medications. The trial court also incorrectly found that the privilege did not apply because the evidence was being used for rebuttal purposes. In fact, there is no rebuttal/impeachment exception in the psychotherapist-patient privilege statute.

Our reversal also renders moot Kramer's double jeopardy challenge, but we address it to provide guidance in the event of retrial and conviction. Should Kramer be convicted upon retrial of both the DUI manslaughter and vehicular homicide charged in the information, the trial court should not enter judgments of conviction as to both.[2] *See Ivey v. State*, 47 So. 3d 908, 911 (Fla. 3d DCA 2010) (recognizing that the seminal Florida case on double jeopardy, *Valdes v. State*, 3 So. 3d 1067 (Fla. 2009), "did not overrule the well-settled principle that a single death cannot give rise to dual homicide convictions," and finding that convictions for DUI manslaughter and vehicular homicide involving one death and arising out of the same criminal episode violated double jeopardy).

Finally, we address Kramer's argument that the trial court erred in sentencing her immediately after the return of verdict rather than continuing the sentencing hearing. In declining to continue sentencing, the trial court relied on section 316.656(1), Florida Statutes (2017), which provides, in pertinent part, that "[n]otwithstanding the provisions of s. 948.01, no court may suspend, defer, or withhold adjudication of guilt or imposition of sentence for any violation of s. 316.193, for manslaughter resulting from the operation of a motor vehicle, or for vehicular homicide."

It appears that the trial court believed that "defer" equated to the grant of a continuance for sentencing. Relevant case law indicates that a deferred sentence is a type of legal disposition—one where the trial court continues sentencing for an indefinite period of time. This is not permitted for any type of case. *See McMillan v. State*, 321 So. 2d 441, 441 (Fla. 2d DCA 1975) (reversing and remanding for resentencing where trial court imposed a deferred sentence, and recognizing that deferred sentences in Florida are invalid). Further, the placement of the word "defer" among the words "suspend" and "withhold" supports this interpretation of "defer" as a legal disposition. On the other hand, the statute's phrasing could support the trial court's interpretation. We are aware that the trial court's interpretation is widespread in the county and circuit courts. But courts and practitioners have expressed frustration with the application of that

---

[2] It is apparent that the trial court believed it had vacated the vehicular homicide conviction. But there is no written order in the record actually vacating the conviction.

interpretation, as it can make coordination and presentation of sentencing evidence, such as witness testimony, difficult. If the statute provided that "no court may defer sentence" or "no court may impose a deferred sentence," it would be clear that the statute was barring the imposition of a deferred sentence. But the Legislature phrased it in a way that could reasonably be read as barring the continuance of a sentencing hearing. In any event, if the trial court applied an incorrect interpretation of the statute, any error was harmless, as defense counsel ultimately agreed to a modified sentencing procedure, and it appears that Kramer received due process. Additionally, our reversal of the conviction on other grounds renders any error in the sentence moot. The issue is an interesting one, however, and might make for an appropriate question to certify to the Florida Supreme Court under different circumstances.

Based on the trial court's erroneous denial of Kramer's motion to suppress, we reverse and remand for new trial.

*Reversed and remanded for a new trial.*

MAY and GERBER, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**

8